## GAMBLE v. GAMBLE'S ADM'R.

1. A deed by which the husband in general terms gives slaves to his wife, in consideration of love and affection, does not divest the estate of the husband in a court of law, and a possession of the slaves acquired by the wife after the death of the husband, as his personal representative, does not invest her with an interest which will inure to her administrator, so as to enable him successfully to defend an action of detinue brought by the administrator *de bonis non* of the husband, for the recovery of the slaves. Such a deed is merely void at law, and can only be made effectual in equity.

2. It cannot be assumed as a legal conclusion, because a wife, who is the personal representative of her husband, produces a deed by which the latter purports to give to her certain slaves, without further proof of the delivery of the deed or slaves, that, therefore the possession of the deed was parted with by the husband for her benefit. The fact of the delivery should be referred to the jury for their determination.

3. The possession of personal property which one acquires as an administrator, cannot be united to and perfect an equitable title which he claims in his individual capacity, so as to defeat an action by the party having the legal estate.

4. A verbal admission by a party that personal property in his possession belonged to the plaintiff, does not estop the defendant from showing that the admission was made by mistake, or that it is untrue; especially, where the plaintiff was not misled by it, or it did not induce him to institute his action.

5. The indorsement on a deed of gift of personal property, that it was *acknowledged and recorded*, purporting to be made by the clerk of a court of another State, is not such evidence of the fact of registration, as the courts of this State will recognize. To authorize the admission of such evidence, the deed should be authenticated as the act of Congress requires; and it should also appear, that the law of the sister State required or authorized the registration of such a deed.

6. Where one acquires the possession of property as an administrator, and an action of detinue is brought against him for its recovery without noticing his representative character upon the record, it cannot be assumed that he is a wrong-doer, so to prevent him from defending upon the title of his intestate.

7. Where a contract by which personal property was sold and conveyed by husband and wife is rescinded, in the absence of all proof to the contrary, the parties will be considered as placed *in statu quo*.

Writ of Error to the Circuit Court of Sumter.

THIS was an action of detinue at the suit of the defendant in error, for the recovery of a female slave named Clara, and other property.    The cause was tried by a jury, who returned a verdict in favor of the plaintiff below in respect to the slave, assessed her value at $500, and damages for her detention at $192, and judgment was rendered accordingly.    On the trial, the defendant excepted to the ruling of the court. It appears from the bill of exceptions, that the intestate of the plaintiff was the wife of Walter Gamble, who was the father of the defendant by a former marriage—there being no issue of the intestate by Walter.    The defendant and his father both repeatedly declared that the slave Clara and her mother Becky were the property of the intestate.

The plaintiff introduced a deed, which purported to have been executed by Walter on the ―― day of May, 1828, which recited that he was then a citizen of Orange county, in the State of Virginia, and in consideration of natural love and affection, gave to the intestate (his wife) the slaves Becky and Clara.    At the foot of this deed there was a certificate subscribed by an individual as clerk, stating that the donor, at a quarterly court held for Orange county, on the 28th of May, 1828, acknowledged the same ; that it was ordered to be recorded, and was recorded in book GG, p. 304. It was also proved by a witness, that he believed the signature of the donor to be genuine ; but he was not present at its execution, knows nothing of its delivery, or of the delivery of the possession of the slaves therein named.

Becky and Clara were the property of the intestate previous to her marriage with Walter, and the latter was heard to say after his removal to Alabama, that they were his wife's, he having only a life estate in them.

Previous to the institution of this suit, defendant said to a member of the bar residing in Sumter, that the plaintiff and himself had settled the controversy in respect to the slaves, but being afterwards advised that as the administrator of his father he could not yield up the possession, the settlement had been vacated, the paper which evidenced it, destroyed ;

and that the plaintiff would now take the slaves from his possession by suit. Defendant at the same time added, that they were the property of the intestate.

The defendant then adduced a bill of sale made by Walter and intestate for Becky and Clara to Benjamin Walker, of Orange county, Virginia, on the 28th February, 1837—a bond of the same date, by which they undertook to pay to Walker the sum of $50 for the hire of these slaves for the remainder of that year, and return them at the end thereof. He also offered a deed purporting to be made in the same county and State, by Benjamin Walker, on the 9th January, 1842, by which he released and quitted claim to Becky and Clara to the defendant and Thomas Gamble. The execution of all these papers was proved, and admitted as evidence.

The deposition of Benjamin Walker was then given in evidence, in which the witness states that he understood that Becky and Clara were acquired by Walter on his marriage with the intestate; he purchased them as indicated by the bill of sale, but afterwards, at the request of his vendors, sold them back at the price he gave, and returned their bill of sale. After the death of Walter, witness was applied to by the defendant for a release of his title, whom he informed that he did not consider he had any claim to the slaves; but at the solicitation of the defendant, gave the quit claim deed above referred to.

Walter, upon his marriage with the intestate, took possession of these slaves, which continued without interruption until his death, except as above—after that event, the intestate took and retained possession until his death; and after intestate's death, defendant took possession, which he still retains. Walter had no other slaves than Becky and Clara until 1828.

Walter made a will, by which he gave to the intestate all his estate for life, then to be divided between his two sons. The intestate administered upon her husband's estate *cum testamento annexo;* after her death the defendant became administrator *de bonis non.* The plaintiff is the administrator of the intestate.

Upon these facts the court charged the jury substantially as follows, viz: The deed of 1828, from Walter Gamble to

his wife, passed nothing in law, because of their unity in legal contemplation; but the gift was just such an one as a court of chancery would sustain; that the donor was probably guided by those influences which would naturally induce a man to desire to give to his wife property which he received by her. This was most probably his motive, as he had no child by the donee, but was the father of children by a previous marriage.

In the opinion of the court, the plaintiff had two sufficient legal grounds for his recovery. Upon the death of Walter, his widow (the intestate) qualified as his administrator with the will annexed, and thus became invested with a legal title and right of property in the slave in question—the equitable estate which she previously had, attached to this legal title and made it complete, and on her death it was transmitted to her personal representative.

A court of chancery would have restrained Walter from selling the slaves to Walker, yet, conceding that the latter acquired a legal title by his purchase, the re-sale placed the donor and donee in the same situation in which they stood previous to the sale to him, as it respects the slaves embraced by the deed of May, 1828.

The local law of Virginia must govern, the construction and effect of the deed from Walter to his wife, and by that law the deed was good between the parties, whether it was recorded or not.

The defendant prayed the court to charge the jury as follows :

1. That the law furnishes the rule to guide them in the construction of the deed of May, 1828; by that law it passed no estate whatever, and is not good even between the parties.

2. The bill of sale from Walter Gamble and wife to Benjamin Walker, if fair and *bona fide*, operated to pass whatever title they had to the slaves embraced by it, and thus divested them of all title thereto.

3. The re-sale of the slaves by Walker, whether made to Walter alone, or to his wife, or to both jointly, vested the property absolutely in Walter Gamble; unless it is shown

122

that by the re-sale it was restricted to the sole and separate use of his wife.

4. The jury must disregard the deed from Walter to his wife, dated in May, 1828, unless it appears from the proof to have been delivered to the latter, or some one for her; or that the slaves were delivered to her, or some one for her.

5. If the intestate, Mrs. Gamble, took possession of the slaves under her husband's will as his property, and in the character of administratrix with the will annexed, she was bound to discharge the debts of the testator, and if she died before a final settlement of the estate, and the defendant was appointed administrator *de bonis non*, then the defendant was entitled in his representative character to retain the slave in question, until a final settlement of his administration accounts. This instruction was refused, on the ground that it was abstract, and the preceding instructions prayed were denied without remark.

S. W. INGE, for the plaintiff in error made the following points: 1. The deed of May, 1828, was a voluntary deed, and void by the laws of Virginia between the parties, unless it is duly recorded: [2 Rand. Rep. 384; 4 Id. 219; 6 Rand. Rep. 135, 541, 764; 1 Ala. Rep. 56; 2 Id. 648.] It is a nullity *at law*, and what a court of chancery would do, was an inquiry which could not have been made on the trial before the jury. [Clancy's Rights, &c. 1; 2 Kent's Com. 129; 2 Story's Eq. 601; 7 Johns. Ch. Rep. 60; 3 How. R. (Miss.) 324.] But if it were permissible to inquire how chancery would regard such a paper, it is insisted that it would not be supported in that tribunal. [Fonb. Eq. 101, note; Clancy's Rights, 260, 393; 1 Dev. & Bat. Rep. 57, 65; 7 Johns. Ch. Rep. 60; 5 Port. Rep. 137; 9 Id. 649; 1 Ala. Rep. 52; 2 Id. 117, 648, 684; 4 Id. 158.]

2. The bill of sale of February, 1837, by Walter and wife to Walker, if fair and *bona fide*, passed whatever title they had to the latter; and the re-sale by Walker vested an exclusive estate in the husband. [4 Port. Rep. 208; 8 Id. 72; 6 Ala. Rep. 418, 463; 3 Johns. Ch. Rep. 88.]

3. As the administrator *de bonis non* of his father, the defendant was entitled to the possession of the slaves. [4 Ala.

Rep. 524;] and the jury should not have been instructed that the plaintiff had the absolute right to recover. [2 Ala. Rep. 310.]

4. The tenor of the charge to the jury was calculated unduly to influence their verdict in favor of the plaintiff. [1 Ala. Rep. 423; 2 Id. 359, 524.]

5. A party's admissions, under a misapprehension of his legal rights, cannot affect his interest. [4 Wend. Rep. 292; 7 Ala. Rep. 185.]

R. H. SMITH, for the defendant in error. There was no proof of a registry law of Virginia, and it could not therefore be assumed that the law of that State required such a deed as that of May, 1828, to be recorded; but if there was proof to the point, the deed would be good between the parties. {4 Ala. Rep. 164; 5 Id. 36.] Whether it was intended to evidence a *gift*, or make a *settlement*, it is alike operative. [Toller's Ex'rs, 226; Wms. Ex'rs, 484, and notes; Clancy's Rights, &c. 259; 2 Story's Eq. 602-3-7-8; 1 Atk. R. 270; 3 Dess. Rep. 155; 2 Johns. Ch. Rep. 537; 7 Id. 61-4; 6 Ala. Rep. 599, 600, 609.]

The delivery of the deed was sufficient. [1 Johns. Ch. R. 240, 251 to 255, 329; 2 Verm. Rep. 473; 3 Dev. Rep. 129.] It is competent to look to the admissions made by the husband and the defendant his son to sustain it, and determine the donor's meaning. [1 Dev. & Bat. Rep. 55; 4 Ala. Rep. 521.]

By the appointment of the wife as executor, and her qualification as such, the legal title attached to the equity she already had; thus executing the donor's intention. [1 Johns. Ch. Rep. 337; 6 Ves. Rep. 662.] But independent of this, the death of the husband removed the wife's disability to hold property, and by operation of law, her estate became legal. [3 Dess. Rep. 155; 7 Johns. Ch. Rep. 61-64; 6 Ala. Rep. 599 ] The defendant cannot resist a recovery, as he induced the plaintiff to sue. [2 Leigh's N. P. 782; 14 Eng. C. L. Rep. 242.]

*Again:* the defendant is a mere wrong-doer, and cannot gainsay the plaintiff's right to recover, although the latter shows no other than an equitable title. The sale in which

the wife joined, to Walker was void, as her husband received the purchase money; [Clancy's Rights, &c. 23, 54, 68; 8 Cow. Rep. 277;] but if it was valid, the rescission of the sale reinvested her with her prior rights; especially does this appear from the admissions of the father and his son.

The defendant cannot defend as administrator, nor insist upon a title held in that character. [3 Stew. Rep. 221; 5 Ala. Rep. 36; 1 Lomax's Ex'rs, 79; Com. Dig. tit. Adm'r, C. (3); 7 Johns. Rep. 161; Rob. on Fraud. Conv. 593-4.]

COLLIER, C. J.—By a principle of the common law, the husband and wife are regarded as one person, and her legal existence and authority in a degree lost or suspended, during the continuance of the matrimonial union. From this principle it results, that at law no contracts can be made between husband and wife, without the intervention of trustees. [2 Kent's Com. 129.] "The principles of the common law apply to pronounce them a mere nullity." Yet courts of equity, though they follow the law, will, under particular circumstances give effect and validity to *post nuptial* contracts. [2 Story's Eq. § 1372.] "In respect to gifts or grants of property by a husband to his wife, after marriage, they are ordinarily, (but not universally,) void at law. But courts of equity will uphold them in many cases, where they would be held void at law; though in other cases the rule of law will be recognized and enforced." [2 Story's Equity, § 1374.] It was formerly supposed, that in all such arrangements the interposition of trustees was indispensable to the protection of the wife ; but it is now well established that courts of equity will protect the wife's *inter*-interest against the marital rights of the husband, although no trustees are interposed. [Id. § 1380 ; Hoot v. Sorrell, et al. at this term ; see also, my opinion in Frisbie v. McCarty, 1 Stew. & P. Rep. 56.]

In Sheppard v. Sheppard 7 Johnson's Chancery Reports, 60, it was said that a deed from a man to his wife "was undoubtedly void in law, for the husband cannot make a grant or conveyance directly to his wife during coverture," and courts of equity have frequently refused to lend assistance

to such a deed, or to any agreement between them; though it must be conceded that there are many cases in which such conveyances have been upheld. And it has been held, that a deed of gift of negroes from the husband to the wife, without the intervention of a trustee, upon an agreement to live separate, will be no bar to an action at law, by the husband, for the recovery of the property. [3 How. Rep. (Miss.) 324.] In that case it appeared that the husband signed the articles of separation, and put his wife in possession of the slaves. The court said, the deed is an absolute gift to the wife, without qualification—it does not profess to give her a separate property; consequently an absolute right vested in the husband, and unless he divested himself of it, he must be entitled to recover. *Again*, the marriage was not dissolved by the agreement to live separate, and the gift by the husband cannot be made available at law, and was improperly admitted as evidence. "Such matters are peculiarly cognizable in equity and if the defendant has a remedy it is there, and not at law." [See also, 1 Atk. Rep. 270; 3 Id 679; Clancy on Rights, &c. 251.]

In the case cited from 7 Johns. Ch. Rep. *supra*, as well as in several cases there referred to by the chancellor, the husband was dead previous to the institution of the suit; such was also the fact in Elms v. Hughes, 3 Dess. Rep. 155; yet in none of them was it supposed that the death of the husband had any effect upon the conveyance which he made to his wife. The jurisdiction of equity was regarded as appropriate—in fact the only tribunal that could recognize and validate the act.

If a *post nuptial* gift *in presenti*, from a man to his wife directly, is merely void at law, and inures to his own benefit, it is difficult to perceive how the death of the husband can impart validity to it. The object of the gift in such case would be the husband's property at his death, and if the wife was to take possession of it under a claim of right, founded on the conveyance, though she might not become an executor *de son tort*, her claim would be disallowed. The act was invalid, as we have seen, in virtue of the law operating upon it, and the mere volition of the wife that it shall be effectual, manifested by exercising dominion over the

thing, cannot impart to it validity. Conceding to her the possession under a claim of right, and still she would have no title to which the possession could attach and perfect, of which a court of law would take notice. Deeds that are voidable only, are sometimes validated by something occurring after their execution, but those which are void *ab initio* cannot thus acquire vitality.

It is not competent for a court of law to inquire, whether a gift such as we are considering is sustained by a meritorious consideration, and is such as equity would uphold. That tribunal is incompetent to institute and pass upon such an inquiry, which can be solved by considerations of which a court of chancery is the appropriate arbiter, and of which it has exclusive jurisdiction. The wife's rights, if she have any, are dormant until they are established in equity—until then they are *in embryo*, and cannot be recognized at law. A court of equity may see in such a transaction, the elements of vitality, but until body, form and action are imparted to these, a court of law must treat it as inanimate and lifeless.

There may be cases in which possession will perfect a title which it would be necessary otherwise to assert in equity; but in these it is apprehended that a court of law would regard the title as good when coupled with the possession, and the only effect of the suit could be, to be let into its enjoyment. Such we have seen is not the character of the case before us. Here the intestate had no title until a court of equity should establish it. Each of these tribunals are charged with the jurisdiction of matters which pertain to the one in exclusion of the other, and it is well settled, that at law a defence purely equitable cannot be entertained.

In Elliott v. Elliott, 1 Dev. & Bat. Eq. Rep. 65, it was decided that the formal signing, sealing and having attested a deed by a husband to his wife, cannot be taken for a delivery, or as having been intended as such. "There must be proof of some further act; delivery in fact, or the production of the deed by the wife, with evidence at least of such acts on her part in relation to the property in his lifetime, as would induce the belief that she had the deed in his lifetime, and by his consent; this is the more necessary, as the intimate relation between the parties, and her means of access to

his papers, affords opportunities to possess herself of the instrument without his consent or knowledge. The ordinary presumptions therefore do not reach such a case." That was a case in equity, and it was added that the "court expects satisfactory and clear evidence that the deed was delivered, and that her husband meant to make thereby such a separate provision for her as the deed purports to create, that is, immediate, and to make himself her trustee, instead of being the beneficial owner." *Further*, "A wife must have merits to make the court active in her behalf. She is not like a purchaser for value. The aid of the court is discretionary under all the circumstances."

In Frisbie and wife v. McCarty, 1 Stew. & P. Rep. 56, the plaintiff relied upon a deed of gift made to the wife by her father, when she was unmarried, and but ten or twelve years of age. A question arose as to the necessity of a delivery of the deed, and it was decided, that so long as the donor retained possession, without ever having delivered it, either to the donee if capable of receiving it, or to some person for her use and benefit, or into the proper office to be recorded, the gift is imperfect and the deed is void. The delivery should be such as would deprive the donor of the power of revocation; for until then he reserves to himself the *locus penitentiæ*.

If the delivery of the deed in the case before us had been a pertinent and material inquiry, the court should not have assumed it as a conclusion of law, but should have referred its solution to the jury. The effect of the joint bill of sale by husband and wife to Walker—the declarations of the husband, and of the defendant since his death, that the slaves were the property of the wife, &c. in determining the question of delivery, were all proper matters for the consideration of the jury under the direction of the court.

If the character of the wife's possession was a question in issue, we think the fact she had administered with the will annexed, on her husband's estate, should have induced the court to charge the jury, that her possession as administrator could not be united to, and perfect an equitable title, which she claimed in her individual capacity. The possession of the property of a deceased person as executor or administra-

tor merely, cannot invest the possession with rights independent of, and disconnected with his trust estate. [12 Ves R. 497; 2 Dess. R. 101; 3 Id. 155.]

The admissions of the defendant that the slave sought to be recovered in this action was the property of the plaintiff's intestate, cannot estop him from showing that the reverse is true, or that he was mistaken. Such an admission is a matter *in pais*, and cannot operate as an estoppel. Nor can his admission that himself and the plaintiff had settled their controversy in respect to the slave in question, but ascertaining that he was not authorized to make such a settlement, they had vacated it, and the paper which evidenced it was destroyed, and the plaintiff would now take the slave from his possession by suit, cannot conclude the defendant from making defence. It may show what was the defendant's opinion at that time, as to the validity of the intestate's title, but does not preclude him from proving that he was mistaken; nor does it seem to us to dispense with all proof on the part of the plaintiff. The admissions do not seem to have misled the plaintiff or the intestate, or to have induced the prosecution of the present suit. There are cases where a party has been estopped by his admission from proving the contrary; thus where a person upon a demand of goods admitted that against him, he will be liable, although he had not a general he had them, and thereby induces another to bring detinue controlling power over the thing. [3 Car. & P. Rep. 136.]

In respect to the registration of the deed of 1828, it may be enough to say that the indorsement of the clerk in Virginia, that it was acknowledged and recorded, is not such evidence of the fact as the courts of this State can notice. The act of Congress prescribes the mode in which such deeds shall be authenticated to entitle them to the dignity of evidence in the courts of the sister States, and it is perfectly clear that the deed as presented to the circuit court did not conform to the act. In addition it may be said, that it does not appear that there was any statute of Virginia which required or authorized the registration of such a deed, and in the absence of proof it cannot be presumed.

It cannot be assumed that the defendant is a wrongdoer, and cannot therefore controvert the plaintiff's claim. If the estate he represents has the superior title, he may assert it and defeat a recovery against him. The cases cited by the defendant in error are inapplicable, and do not prove the reverse to be the law in a case circumstanced as the present. But if the law were otherwise, the plaintiff would fail for the defect of his own title—or rather because he has not shown a *prima facie* legal title in his intestate.

We infer from the proof in he re cord, that the sale by the husband and wife to Walker, was merely rescinded ; and consequently the rights of all parties were placed in *statu quo*. What we have said will indicate our view of the laws in this case, without making a particular application of it to the questions raised upon the bill of exceptions. The result is, the judgment must be reversed, and the cause remanded.