WILLIAMS, Adm'r. *vs.* MAULL.

1. A will contained the following clause; "I give and bequeath to my daughter M., to be held in trust by my executors, for her use during her natural life, and then for the heirs of her body forever, the following negroes, (naming them,) together with their increase. It is my will and desire, that the labor and increase of the said negroes shall, in no manner whatever, be liable for the debts of her present, or any future husband." The will also provided, that if the said M. should die "without leaving issue," then the executors should sell the negroes, and divide the proceeds among the testator's heirs at law then living. *Held,*
That, *as against the personal representative of the husband,* the will created a *separate estate* in the wife, which a court of equity would protect.

2. Where slaves are sent home with a newly married couple by the wife's father, and are afterwards bequeathed by him to the wife for her sole and separate use, and the husband during his life treats them as his wife's property secured to her by her father's will, he will be held in equity to have elected to treat them as a loan, and not as a gift, and his representative is bound by that election.

3. Although courts of law cannot regard contracts entered into between husband and wife while that relation exists, yet courts of equity can recognize and enforce them, in favor of the wife against her husband's administrator, where the rights of third persons are not thereby injuriously affected.

4. Where the husband purchases negroes in the name of his wife, takes the bills of sale in her name, and treats the negroes during his life as her property, and the property thus purchased is a reasonable provision for her under the circumstances of the case, a court of equity will uphold the transaction, and secure the property to the wife against the claim of her husband's administrator.

5. The facts that the husband took the bills of sale in the name of his wife, and always recognized the property as belonging to her, disclaiming all ownership over it himself, are equivalent to a delivery of it to her, and a court of equity will regard the possession of husband and wife during his life, as the possession of the wife; and where the possession, under such circumstances, remains with the wife after her husband's death, equity will regard her as having a beneficial interest in the property, and not as holding it in trust for her husband's administrator.

6. A court of equity is the proper forum in which a wife should litigate with her husband's personal representative, her right to property which she claims against him, as her separate estate under her father's will and by post-nuptial contract with her husband.

ERROR to the Chancery Court of Lowndes.

Tried before the Hon. J. W. Lesesne.

This was a bill filed by the widow of James Maull, deceased, against his administrator, to enjoin an action of detinue

brought by the latter against her, to recover divers negro slaves which she claims as her separate property. The nature of her claim, and so much of the proof as is necessary to a proper understanding of the points decided, will be found in the opinion of the court.

T. WILLIAMS and T. J. JUDGE, for plaintiff in error:

I. As to the slaves claimed under the will of Philip Givhan.

1. These slaves went into the possession of James Maull upon his marriage in the lifetime of Givhan. The presumption of law then is, that they were intended as a gift, and not as a loan, "unless at the time a less estate was declared or limited." Olds v. Powell, 7 Ala. 652. There is no evidence in the record to rebut this presumption ; consequently the husband's marital rights *eo instanti* attached, and the will of Givhan, subsequently admitted to probate, can have no effect upon his title.

2. The words of the will are insufficient to create in Mrs. Maull a separate estate. The rule is, that the intent to exclude the marital rights of the husband must be clearly evinced by the language employed. As to what words are sufficient, and what insufficient, to create such an estate, see Lamb v. Wragg & Stewart, 8 Por. 73 ; Cook v. Kennerly & Smith, 12 Ala. 46 ; Newman v. James & Newman, ib. 29 ; Story's Equity, §§ 1382, 1383. In this case, the *corpus* of the property is given to Mrs. Maull during her life, but there are no words excluding the marital rights of the husband. This was, in legal effect, giving the property for the use of the husband, as soon as he reduced it to possession. The latter part of the clause declares, "that the labor and increase of the slaves shall in no manner whatever, be liable for the debts of her present, or any future husband." Here also, are no words of exclusion, *as to the husband's marital rights. Creditors* only are attempted to be excluded, and as to them the provision is void. Rugely & Harrison v. Robinson, 10 Ala. 702.

II. As to the slaves purchased in South Carolina, which are alleged to have been purchased with her own means. The proof does not sustain the allegation on this point. As to the effect of the deed, executed in South Carolina in 1804, making her a free dealer, see Cornwell v. McDaniel, 1 Hill's S. C. R. 428.

III. As to the slaves purchased in Alabama. The bill alleges that Mrs. Maull and her husband worked their property together in common, and out of her share of the proceeds she purchased these negroes. But Mrs. Maull had no separate property in Alabama, and the allegations, as to the purchase by her, are not sustained by the proof. The fact that the bills of sale were taken in her name cannot alter the case, if they were purchased by the husband.

IV. The husband's conduct and declarations are relied on, to show title in the wife to all the slaves claimed.

1. We contend, that no conveyance to a third person for the wife was ever made by the husband. If there was any gift or grant to her, it must have been by parol, and delivery is essential to such gift. There was no delivery in this case; but on the contrary, the possession always remained with the husband, and he never relinquished his dominion over the property. Sims v. Sims, 2 Ala. 117; Blakey v. Blakey, 9 ib. 391; Hunley v. Hunley, 15 ib. 91: Machin v. Machin, 15 ib. 373.

2. In cases of gifts and grants by husband to wife after marriage, clear and incontrovertible evidence is required to establish them. 2 Story's Eq. § 1375; 2 Swans. R. 108. Such provisions must amount to only a reasonable settlement to the wife, else they are void even in equity. Ib.

3. The case of Puryear v. Puryear, 12 Ala. 13, does not militate against us, as is evident from an examination of the facts of the two cases. Machin v. Machin, 15 Ala. 373.

V. Admitting the case made by the bill, chancery has not jurisdiction, because complainant's remedy is adequate and complete at law. 12 Ala. 13; 16 ib. 486.

ELMORE & YANCEY, *contra:*

Husband and wife may make contracts with each other. If the consideration is valuable, the contract will be sustained against the creditors of the husband. If it be voluntary, the contract is good against the husband. 2 Story's Equity, § 1372, 1375, 1380, 1385, 1386.

If the agreement be between the husband and wife alone, the trust will attach, and he will be held a trustee for the wife. 2 Story's Eq. § 1380.

If the negotiations, or contract, or securities, or titles to property be in her name, they will at law belong to the husband, and on his death the wife cannot at law defend a suit for it by the husband's representative. A court of law looks alone to the legal title in personalty as well as realty. 2 Story's Eq. § 1386, 1387; Gamble v. Gamble, 11 Ala. 966; 14 Ala. 121, 134; 15 Ala. 373, 377; 16 Ala. 486, 491.

If the title, however, is taken in the name of a third person for her use, she may defend the suit at law, because of the title being in the third person. 16 Ala. 486, 491.

There is a difference between money and property. If a party is in justice and equity entitled to money, the defence to its recovery may be made at law. 12 Ala. 13; 2 Story's Eq., § 1256.

If a father sends negroes to his daughter after her marriage, the presumption is, that he intends them as a gift, and they belong to the husband; but this presumption may be rebutted by evidence, and the husband's declarations in regard to it are the strongest evidence of the character in which they are held. His acts and declarations years afterwards are good even against his creditors. Inge v. Murphy, 10 Ala. 894.

The declarations of the husband in such case, that he held under the will of the father, rebut the presumption of a gift, and the declarations of Maull that his wife held or owned property under the will of her father equally rebut the presumption.

We think the title to the negroes claimed under the will was in Maull. The words of the will give the property and title to Mary Maull, and vest by law the title in her husband. To prevent the title from vesting in the person to whom the property is given, there must be words of exclusion, as the title otherwise will be held to be with the property. There is no bequest to the executors of the property, or any part or interest, although there is a trust or duty imposed on them in regard to it, that is, to see that the purpose of the will was carried out. It is the same thing as if, after the bequest to his daughter on particular uses, he had added, "and I charge my executors with the duty of seeing executed these provisions of my will." In such a case, the executors could only act by refusing to let the property pass out of their hands, un-

til proper instruments were executed by the proper parties effectuating the intention of the will; or if they had given up the property, by filing a bill to compel an execution of such instruments. They could not at law recover the property after assenting to the legacy.

If the will vested the title in the executors, it is in them as executors only, and is a personal trust, and they died many years before Maull. Upon their death the title vested in Maull, or in no one; for there was no person in being, except himself, in whom it could vest, and a title is not permitted to be in abeyance, even as to real estate, except in cases of necessity. We have been unable to find any thing about the abeyance of titles to personalty.

We are satisfied, however, that the first view on this point of the will is the correct one, and that the title passed to Mrs. Maull, and vested in her husband. The rights of the husband in this property are excluded in the will, and if not, the property is covered by the instrument made by Maull, his wife and Givhan.

It is clear, however, that the title to the negroes acquired by purchase, vested in him. The agreement is not a deed conveying the title to any property to Givhan. It is a covenant on Maull's part that he will not claim any of the property, and in its legal effect it is a covenant to hold the title for his wife's separate use. The negroes bought by Mrs. Maull are covered by this agreement. The term goods means in law, all moveable personal property. The instrument is to be construed most strongly against Maull, and taking the whole context into view, especially as to what might be given or devised to her, there can be no doubt he intended to relinquish all dominion over any goods or personalty she might inherit or receive by gift, bequest or purchase. It cannot be seriously contended, that the instrument secured to her only a particular species of personal property, when there are no words of exclusion, but a term including every character of that property. But if there was any doubt on the subject, his acts and declarations, and her acts and declarations subsequently, prove what they meant, and, therefore, what was meant in the instrument by the terms used. He admits her right to these negroes, and she can have none in them, except

under the agreement, or because they were purchased with the proceeds of the labor of those acquired under the will, or because they were purchased with his money and given to his wife; and in either aspect of the case, the title is in him, and there is a clear admission or declaration of her right.

If the jurisdiction would attach as to any one of these negroes, the court will exercise it as to all.

CHILTON, J.—To facilitate our inquiries, we shall consider the slaves, the title to which is litigated, under two classes: First, Those claimed under the will of Philip Givhan; Second, Those acquired by purchase in the wife's name.

Mrs. Maull insists, that a separate estate in the slaves mentioned in the will, was vested in her by its provisions, and of this opinion was the Chancellor. Let us first examine this proposition, which is strongly contested by the plaintiff in error.

The clause in the will under which said slaves are claimed is as follows: "I give and bequeath to my daughter, Mary Maull, (wife of James Maull,) to be held in trust by my executors hereinafter named, for the use of the said Mary Maull during her natural life, and then for the heirs of her body forever, the following seven negroes, namely, Elsey, Harriet, Peggy, Sue, January, Amey's daughter, Cloe, and little Jack, together with their increase. It is my will and desire, that the labor and increase of the said negroes shall in no manner whatever be liable for the debts of her present or any future husband. But in case it should so happen, that my said daughter, Mary Maull, shall depart this life without leaving issue, then my said executors hereinafter named shall sell the negroes left my daughter, Mary Maull, as aforesaid, either for cash or credit, as they in their discretion may think proper, and divide the nett proceeds of the said negroes equally between such of my heirs as shall be then living, share and share alike, to them and their heirs forever."

We are not called upon to construe this clause with reference to the question, as to whether Mrs. Maull takes under it more than a life estate. The inquiry which arises is, does the language of the will vest in her an estate or interest in the property to her sole and separate use?

The *corpus* of the property, with the use, is given to the wife, but an executory trust is created in the executors, for the purpose of protecting the ulterior interest of those in remainder. There are no words indicating an intention to exclude the marital rights of the husband, either in the property itself or the use, except that the labor and increase, (by which we understand the profits derived from its use,) are not to be subject to his debts.

1. It is very clear that the appointment of a trustee, with the powers here conferred upon him, does not have the effect of vesting a separate estate in the wife. See Lamb, Trustee v. Wragg & Stewart, 8 Port. R.73; Carleton & Co. v. Banks, 7 Ala. Rep. 32; O'Neal et al. v. Teague, 8 Ala. Rep. 345; Cook v. Kennerly & Smith, 12 Ala. Rep. 42; Hale et al. v. Stone, 14 ib. 803; Bender v. Reynolds, 12 ib. 446; Moss v. McCall, ib. 630; Pollard et al. v. Merrill & Eximer, 15 ib. 169; Lenoir v. Raney ib. 667. Does the provision, "that the labor and increase of the property shall not in any manner be subject to the debts of the husband," furnish a sufficient indication of an intention to exclude him?

2. It is insisted by the counsel for the plaintiff in error, that this provision is void, and to sustain this position they refer to the case of Rugely & Harrison v. Robinson, 10 Ala. Rep. 702. A slight examination will suffice to show, that the case cited is not at all analogous to this. In that, the bequest was to a trustee for the use and benefit of Eli Robinson and his family, and the testator clothed the trustee "with full power and authority, and invested him with ample interest in the property, to exonerate and discharge and hold it free from the debts which said Eli may have contracted." An interest was given to Eli in the property, and an attempt was made to exonerate that interest from liability for his debts. The latter provision was held void, upon the ground that the liability to the debts of the proprietor of property, either at law or in equity, was an inseparable incident of its ownership.

So in Pollard et al. v. Merrill & Eximer, 15 Ala. Rep. 169, the deed conveyed property to trustees, for the separate and exclusive use of the husband and wife during their joint lives, nowise liable to the husband's debts. Here was an interest

attempted to be excluded from the debts of the party in whom it was vested, and we held that the provision, which sought to exempt the property from liability to the debts of the owner, was void. Such has long been considered the settled rule of law, both in this country and in England. See Foley v. Burnell, 1 Bro. C. C. 274; Brandon v. Robison, 18 Ves. 429; Hallett v. Thompson, 5 Paige 583; 2 Story's Eq. Jurisp. § 974, *a*. In such cases, the provision which attempts to place the property beyond the reach of creditors is repugnant to the estate created by the instrument, and consequently is void. But such is not the case with the will before us; for here the property is *given to the wife*, not to the husband, and hence the clause, that it, or the issues and profits of it, shall not be subject to *his* debts, is perfectly consistent with *her* estate, and may, therefore, be upheld without violating any rule of law.

It is said, however, that giving the property to her is equivalent to a gift to the husband, because of their legal identity; and this argument would be unanswerable, but for the fact, that it assumes the provision against the liability of the property to the husband's debts to be void, whereas it is the duty of the court, to give effect to all the words of the will, and to impute meaning to them, if capable of meaning, without violating the general intent, or any other provision of the will with which they may appear inconsistent. 10 Bacon's Abr. (Bouv. Ed.) 533; 1 Ves. (Sum. Ed.) *n.* 4; 18 Ala. Rep. 132, 159, 160. And without determining how far a court of common law might countenance the doctrine contended for by the counsel for the plaintiff in error, we think it quite clear, that a court of equity, seeing that the testator has created an interest by language utterly inconsistent with the idea of its vesting in the husband, but perfectly in accordance with a separate estate in the wife, to whom, by name, the property is given, will disregard the legal fiction of unity, and effectuate the intention of the testator, in the only way it can be done, by excluding the marital rights of the husband. This gives effect to each clause in the bequest, and is not inconsistent with any other provision in the will. Although it is usual to insert, in instruments designed to convey a separate estate to a married woman, the technical expressions, "to

her sole and separate use," yet it is well settled, that no particular phraseology is necessary. "It is sufficient," says Justice Ormond, in Newman v. James & Newman, (12 Ala. Rep. 32,) "that the intent was to secure it to the use of the wife, in such a mode as to be inconsistent with the enjoyment of the gift by the husband, or with the exercise of dominion over it by him."

Whenever it appears from the whole instrument, that it was the donor's intention to convey the property to the married woman's use exclusive of her husband, then, without regarding the form of the instrument, or the particular language used, the husband's marital rights do not attach. Brown v. Johnson, use, &c., 17 Ala. Rep. 232–3.

3. It is objected, however, that the property bequeathed by the will to Mrs. Maull had previously been sent home with her by her father upon her marriage, and that it thereby vested in her husband, leaving no estate in the testator, (Givhan,) and consequently none passed by his will; and Olds v. Powell is relied on, to show that the husband, James Maull, acquired a title to this property as a gift. That case determines that property sent home with a new married couple, will be presumed to be a gift, unless a less estate is at the time expressly declared or limited; that the question as to whether it was a gift, or a mere loan, was one of intention; and that the declarations of the donor, made at or about the time the property was sent, were admissible to prove such intention.

It will be borne in mind, that in the case before us the controversy is between one who represents the husband, and the party claiming under the will. No creditor complains; for the estate is solvent, and their claims are satisfied, or may be satisfied out of its ample assets. The personal representative stands in precisely the same relation to this property in which the deceased stood, as respects his right to recover. Now upon examination of the proof, it is plain from the repeated declarations of James Maull, that he regarded this property as belonging to his wife, and as secured to her under and by virtue of her father's will. He must be presumed to have known whether he received the property upon his marriage as a gift, or as a loan. He has elected to treat it as a loan—has recog-

46

nized as valid a subsequent disposition of it by his father-in-law, and his representative is bound by that election.

In Machen v. Machen, 15 Ala. Rep. 373, we refused to give to the repeated declarations of the husband, that certain property belonged to his wife, the effect of vesting her with the title; but it will be remembered that, that was a proceeding at law, and no contract directly made by the husband with the wife, much less his mere declarations, could have clothed her with the *legal* title. Gamble v. Gamble, 11 Ala. Rep. 966, relied upon in that case, is conclusive upon the point to which it is cited.

Although courts of law cannot regard contracts entered into between husband and wife while the relation exists, yet courts of equity act upon a very different principle; and this brings us to the consideration of the nature of Mrs. Maull's claim to the slaves which were purchased in South Carolina and in this State.

These were purchased in the name of Mrs. Maull, and it is contended that the effect of such purchase is to vest the title in her husband. This is unquestionably true as respects a court of law; but such is not its effect in a court of equity, which regards the parties as capable of contracting with one another, and will carry out and give effect to their agreements, if in so doing the rights of third persons are not injuriously affected. Concede that the husband purchased these slaves with his own money, as is claimed by the counsel for the plaintiff in error, but took the title in the name of his wife, and treated the property as belonging to the wife, as the proof in the case shows, how is the transaction to be viewed by a court of equity? If the husband designed to give the wife no interest in the property, why were the bills of sale taken in her name? Why did he not take the evidence of title directly to himself? The answer to this inquiry can alone be found in the fact, that he designed the purchases for the sole benefit of his wife; and this intention abundantly appears from the record, when we consider these bills of sale in connection with the contract entered into between them in South Carolina, and the conduct and declarations of the parties.

Although, according to the principles of the common law,

there is a positive incapacity on the part of the married couple to contract with each other, yet the courts of equity often give full effect and validity to post-nuptial contracts. 2 Story's Eq. § 1372. "If," says this author, "the husband should, after marriage, for good reasons, contract with his wife, that she should separately possess and enjoy property bequeathed to her the contract would be upheld in equity." As to gifts and grants of property by a husband to his wife after marriage, they are ordinarily void at law; but courts of equity uphold them in many cases where the law declares them void. Ib. § 1374. It is said, the husband cannot give the wife his whole estate, Beard v. Beard, 3 Atk. 72; but if it amount to a reasonable provision, and there is no ground to suspect fraud or imposition, courts of equity will uphold the transaction, Ib. Upon the proof in this case, we do not think that it can be affirmed, the property secured to the wife is an unreasonable provision for her *under the circumstances.*

It is objected, however, that if we regard the property purchased in the name of the wife as a gift, there is no evidence of such gift having been perfected by a delivery. This position is not sustained by the record. We have seen that the wife had separate property secured to her by the will of her father. This was in the possession of husband and wife, but recognized by the husband as belonging to her. It is by no means an unreasonable inference, that the after acquired property, which was recognized also as hers, should be held in a similar manner. And as the *law* would refer the possession to the holder of the *legal* title, on the other hand a court of *equity* will indulge the presumption that the party *really* and *beneficially* interested was in the the possession.

But we are not left to indulge in presumption merely. The facts that the husband has taken the title in the name of his wife,—that he disclaimed all ownership of it up to the time of his death, and that she is now in possession, armed with this evidence of title, are sufficient in a court of equity to uphold her claim. We will not say but that it was competent for the husband, while living, to have revoked the gift or settlement. We are inclined to the opinion that he had this power; but as to the property now in dispute, the record no where shows that he exercised this power. That he disposed of some property simi-

larly situated, does not prove a revocation as to this. The title having been made to her, *and remaining in this condition at the death of the husband, and the transaction being unaffected by any cotemporaneous evidence rebutting the presumption of a gift*, she cannot be regarded as holding the legal title in trust for his representatives, but as having a beneficial interest in the property. See Rider v. Kidder, 10 Ves. 367; Greene v. King, 2 Sir Wm. Bla. 1211; Kingdon v. Bridges, 2 Vern. 67; Back v. Andrews, ib. 120; Spence's Equity Jurisp. Vol. 2, pp. 218, 219.

It may be conceded that the deed made in the State of South Carolina is void, (a point, however, which we do not decide,) yet it serves as an index to the intention of James Maull, the husband, in taking these bills of sale in his wife's name. This, coupled with the other facts above alluded to, leaves no doubt upon our minds that the husband designed these slaves to vest in his wife; and makes it our plain duty to prefer her claim to that of his administrator.

What we have said as to the different views taken by courts of law and equity, of contracts between husband and wife, sufficient shows that a court of equity is the proper forum in which the wife should litigate her right to this property.

The decree of the Chancellor, being in accordance with the views we have expressed, is, in our opinion, entirely correct, and is consequently affirmed.