## FRIERSON vs. FRIERSON.

1. One who has not the entire interest in the property sued for cannot maintain detinue.

2. A testator, by the first clause of his will, bequeathed sixteen negroes specifically to his wife, and, by other clauses, made absolute specific bequests to four of his daughters, giving to one eleven negroes, to another four, and to another two.    The residuary clause was as follows : "It is my will and desire, that my beloved wife have the residue and remainder of my estate, both real and personal, during the term of her natural life, and that no sale or alteration of my plantation, stock, household furniture, or any other thing shall accrue, until her death ; then, it is my will and desire, that *my negroes be divided between my five daughters*, share and share alike, for their use during the term of their natural life, and not subject to the debts of their husbands, or any future husbands, and at their deaths to their heirs forever; and it is further my will and desire, that the residue and remainder of my estate, both real and personal, be divided between my four daughters, viz:" &c.    *Held*, That the negroes mentioned in the residuary clause were those which were specifically bequeathed to the wife by the first clause, or included such slaves only as were not specifically bequeathed; and that the residuary clause did not embrace the slaves specifically bequeathed to the daughters, so as to give them a separate estate therein.

3. At law, where the title to property has vested in the husband, as in case of a gift or bequest to the wife, no contract which he may afterwards make directly with her, and *a fortiori* no declaration or admission made by him during co-

verture, can vest the property in the wife, so as to enable her to maintain or resist an action by or against his personal representative.

4. The admission of irrelevant testimony will reverse, unless the record clearly shows that no injury could have resulted; it is not enough, that the Appellate Court is not able to discover injury; it must see clearly that none could have resulted.

ERROR to the Circuit Court of Tuskaloosa.

Tried before the Hon. GEO. D. SHORTRIDGE.

DETINUE by the plaintiff in error, Mary C. Frierson, against the executor of her deceased husband, Robert Frierson, for the recovery of four slaves, which the plaintiff claimed under the will of her father, Thomas McRae, as her separate estate.

On the trial below, the plaintiff introduced a copy of the will of said McRae, the material provisions of which are as follows : The first clause contains a specific, absolute bequest of sixteen negroes to the testator's wife; the second, a specific bequest of eleven negroes to his daughter, Sarah B. McRae, "to her and her heirs forever;" the third, a specific bequest to his daughter, Mary C. Frierson, of four negroes, "to her and her issue forever;" the fourth, a specific bequest of two negroes to his daughter, Catherine D. McDowell, "to her and her heirs forever;" the fifth, a bequest to his daughter, Sarah B. McRae, of a feather bed and furniture; then follows the residuary clause, which is as follows : "It is my will and desire, that my beloved wife have the residue and remainder of my estate, both real and personal, during the term of her natural life, and that no sale or alteration of my plantation, stock, household furniture or any other thing shall accrue, until her death; then it is my will and desire, that my negroes be divided between my five daughters, share and share alike, for their use during the term of their natural life, and not subject to the debts of their husbands or any future husbands, and, at their deaths, to their heirs forever; and it is further my will and desire, that the residue and remainder of my estate, both real and personal, be divided between my four daughters, viz : Catherine D. McDowell, Sarah B. McRae, Esther L. Witherspoon and Mary E. White, share and share alike."

The plaintiff also proved, that the four slaves sued for were those bequeathed to her by the third clause of said will; that

they were sent to this State after said testator's death, and came into the possession of her husband; that he was at first disposed to assert title to them, but afterwards admitted that he was satisfied they belonged to his wife; that he hired them from her by an agreement in writing, and paid her the hire; that one of the negroes was, at her request, delivered to her son by a former marriage, and retained by him for nearly twelve years, until the death of said Frierson, when he was delivered to the plaintiff, and was by her brought back and placed upon the plantation of said Frierson.

The defendant offered evidence tending to show, that the said Thomas McRae had other slaves than those specifically bequeathed by his will; to which evidence the plaintiff objected, on the ground that parol evidence was not admissible to explain said will; but the court overruled the objection, and admitted the evidence, and plaintiff excepted.

The court charged the jury: "That, laying aside the parol evidence objected to, the true construction of the will of Thomas McRae was, that as the gift over of slaves after the death of the wife was repugnant to the first clause of the will giving her an absolute estate in the slaves there mentioned, her estate in the slaves was cut down to a life estate, with remainder at her death to the five daughters of the testator, and that in these slaves the five daughters would take a separate estate; but that the bequest to the plaintiff, by the third clause of the will, of the four slaves in controversy, was absolute, and that the marital rights of the husband immediately attached; further, that the testimony in the cause did not authorize them to infer, that Robert Frierson, the husband, had conceded the exclusive right and title to the said four negroes to be in the plaintiff, not only as it respected the three slaves that remained in his possession. but also as respected George, though he had been in the possession of a son of the plaintiff's, with the consent of defendant's testator, for about twelve years; and that, from the testimony, they must find for the defendant."

The plaintiff excepted to this charge; and she now assigns it for error, together with the admission of the evidence objected to.

ORMOND & NICOLSON, for plaintiff in error:

1. According to the proper construction of the entire will, the plaintiff in error took a separate estate in the four slaves sued for. The residuary clause declares, that, at the death of the testator's wife, his negroes should be divided equally among his five daughters, share and share alike; "my negroes" is the expression, manifestly referring to all the negroes given by his will. Though the testator had, by the first clause, given to his wife an absolute estate, yet the residuary clause cuts it down to a life estate, so as to give effect to the entire will. It is contended, that the testator left other negroes, not mentioned in the will, upon which the residuary clause can operate. Admitting this for the present, still it is clear, that, upon the death of the wife, an equal division was to take place of the negroes, and the daughters were to take a separate estate in them.

The daughters were married women. What possible motive could exist, for giving the negroes which were to go to them immediately upon the testator's death, in such a way that their husbands would immediately take them, and then give them a separate estate in those slaves which were to go to them after the death of their step-mother, an event which might not happen for many years, and in fact has not yet happened? It is impossible to suppose that such a disposition could be intended, as it would give the daughters a separate estate in those slaves which they might never live to enjoy, and leave those which were to go immediately into their possession subject to the claim of their husbands. The will was made twenty years since; the remainder has not yet fallen in; and the husband of the plaintiff is long since dead. So that the protection which the father threw around the interests of his daughters was illusory, according to the construction of the will adopted by the court below. Sherrat v. Bently, 2 Mylne & K. 149.

2. The court certainly erred, in the charge given to the jury. The proof shows, that the husband admitted that the slaves belonged to his wife; that he hired them from her, executing an instrument promising to pay her their hire, and that he did so; that he delivered one of them, at the expiration of his term of hiring, by the plaintiff's direction, to her son, with whom

he remained twelve years. The execution of the note for the hire, was as distinct and unequivocal an admission as could be made, and brings the case within the principle of Puryear v. Puryear, 12 Ala. 13, and 16 ib. 486. As to the negro who was delivered to the plaintiff's son, and kept by him for twelve years, until the testator's death, the inference is absolutely irresistible, that the husband admitted the exclusive right of his wife. His title, if he had any, was gone, by the statute of limitations. In addition to the cases already cited, see Slanning v. Style, 3 P. Williams 337. As to the right of the wife to sue on a contract made with her husband, see 2 Barn. & Adol. 447; 22 Eng. Com. Law R. 119; 6 Mees. & W. 422.

3. We also contend, that the court erred in permitting parol testimony to explain the will.

E. W. PECK, contra:

The will of plaintiff's father did not give her a separate estate in the slaves sued for; consequently, on the delivery of them, by her father's executor, to her husband, defendant's testator, his title became perfect, by virtue of his marital rights. O'Neal et al. v. Teague, 8 Ala. 345; Welch v. Welch, 14 ib. 76–81; Lenoir v. Rainey, 15 Ala. 667. This title was in no wise affected by the subsequent admissions or declarations of defendant's testator, because they were made in ignorance of his legal rights. Gamble v. Gamble, 11 Ala. 966; Machen v. Machen, 15 ib. 375; Moore v. Hitchcock, 4 Wend. 292. And the alleged hiring from his wife stands upon the same principle.

GOLDTHWAITE, J.—It is urged, that, by a correct construction of the will of Thomas McRae, the plaintiff in error took a separate estate in the four slaves specified in the third clause; and this construction is attempted to be supported upon the succeeding clause, by which the testator declares, that, at the death of his wife, his negroes are to be divided between his five daughters, share and share alike. But if this construction was adopted, it is clear that the plaintiff in error could not recover, as, by the clause last referred to, the division of the slaves was not to take place until after the death of the testator's wife; and, as it is conceded that she is still

36

living, the plaintiff in error could not have the entire interest in the slaves, and consequently could not maintain the action. Miller v. Eatman, 11 Ala. 609.

But this construction of the will cannot be supported. The testator, by the first clause, makes a specific and absolute bequest to his wife of sixteen negroes, and then, after certain specific legacies to his children, follows the residuary clause, giving to his wife the remainder of the estate, both real and personal, during the term of her natural life, with the direction, that no sale or alteration of the plantation, stock or household furniture, or any other thing, should be made until her death; that then, it is his will, that his negroes be divided between his five daughters, share and share alike, for their use, during the term of their natural lives, and not subject to the debts of their husbands, and at their deaths, to their heirs forever; and that the residue of his estate, both real and personal, be divided among four of his daughters, whose names are specified, share and share alike. It is, we think, perfectly clear, that the negroes which are referred to in the last clause mentioned, and which, at the death of his wife, are to be divided among his daughters, are the slaves which are given to the wife by the specific bequest; or, if he left other slaves not specifically bequeathed, it might include such slaves only; but after giving to one daughter eleven negroes, to another four, and to another two, there is no reasonable or sensible construction, which would authorize us to infer that these legacies were to be revoked, and that his entire negro property was to be divided amongst the five daughters equally.

Upon the supposition, that the slaves which the daughters were to take after the death of the wife referred to the slaves given to her by the first clause of the will, the only inconsistency is, in giving a life estate to the wife, instead of a fee simple; while on the other hand, the construction insisted upon would operate as a revocation of several specific legacies, and make an entirely different appropriation of a large portion of the estate. Our conclusion, therefore, is, that the four negroes were a present, specific and absolute bequest, and that, under the will, the plaintiff in error would take a separate estate in those slaves only which, by its terms, she was to take at the death of the testator's wife.

But it is urged, that, even if the will of Thomas McRae did not invest the plaintiff in error with a separate estate in the slaves sued for, it appears from the record that evidence was offered, on the trial below, tending to prove that the testator of the defendant in error, who was the husband of the plaintiff in error, had admitted her right to the slaves in controversy, hired them from her, and permitted one of them, at her request, to remain in the possession of her son by a former marriage, nearly or quite twelve years; and that the court erred, in instructing the jury, that they could not, from evidence of that character, infer that he had conceded the exclusive right to the slaves to be in his wife. The rule is well settled, that at law, where the title to the property has vested in the husband, as in the case of a gift or bequest to the wife, no contract which he might afterwards make *directly* with her, and *a fortiori* no declaration or admission made by him during coverture, can vest the property in the wife, so as to enable her to maintain or resist an action by or against the representative of the husband. Machen v. Machen, 15 Ala. 373; Gamble v. Gamble, 11 Ala. 966. The decisions which we have referred to are conclusive upon this point, and apply with the same force to the slave which was permitted to go into the possession of the son of the plaintiff in error, as to the other slaves. His possession was not adverse to the husband; and the length of time he may have retained him, under the contract with or concession to the wife, did not invest her with the legal title.

In relation to the objection which is founded on the ruling of the court below in admitting parol evidence, to explain the will of Thomas McRae, we are satisfied that it was irrelevant; but as it could only have been offered to show that the plaintiff in error did not take a separate estate in the slaves sued for, and as the will, under the construction which we have given to it, was conclusive upon that question, without the aid of such evidence, no prejudice could have resulted to the plaintiff in error from its admission. The admission of irrelevant testimony will reverse, unless the record clearly shows that no injury could have resulted. It is not enough, that the court is not able to discover injury; it must see, and see clearly, that none could have resulted. If, for instance,

the whole of the evidence objected to could be withdrawn, and the party in whose favor it was offered still be entitled to a verdict, it is apparent that the opposite party could not, in such a case, be prejudiced by its admission. This was the situation of the case under consideration. The will referred to showed, upon its face, that the plaintiff in error was not entitled to a separate estate in the slaves which she was attempting to recover, and the evidence objected to was cumulative, upon a point that was established as a legal conclusion from the other facts of the case.

There is no error in the record, and the judgment is affirmed.