## IRONS *vs.* REYNOLDS.

[TRIAL OF RIGHT OF PROPERTY IN SLAVE BETWEEN PLAINTIFF IN ATTACHMENT
AND WIFE OF DEFENDANT IN ATTACHMENT.]

1. *Wife's right to slave purchased by husband, in his own name, with money belonging to her separate estate.*—If the husband purchase a slave in his own name, and take the bill of sale to himself, the legal title vests in him, although the purchase money was the proceeds of the sale of property in another State secured to the wife by antenuptial agreement there executed; and though he may deliver the slave to the wife, and recognize it as hers, yet she cannot interpose a claim at law, in her own name, when the slave is taken under attachment against the husband.

APPEAL from the Circuit Court of Washington.
Tried before the Hon. ANDREW B. MOORE.

HENRY L. REYNOLDS, the appellee, commenced a suit against James Irons by original attachment, which was levied on a slave woman named Patsey, to whom a claim was interposed by Mrs. Catherine Irons, the appellant, who is the wife of the defendant in attachment. On the trial of the right of property, at the March term, 1855, the following bill of exceptions was sealed, at the instance of the claimant.

" This was a case of original attachment, which issued in September, 1854, at the suit of the plaintiff against James Irons, for his individual debts, not contracted for necessary family supplies; which was levied on several pieces of property, among which was a female slave named Patsey, claimed by Mrs. Irons as her property. Upon the trial of the cause, the plaintiff proved, by the sheriff of the county who made the levy, that he found said slave at the house of James Irons, who lived in the same house with the claimant as husband and wife; and that he levied the attachment on said slave. The plaintiff proved, also, by Richard F. Vaughn, that the said Irons and his wife came to this county, to reside, in the spring of 1853, bringing the said slave with them; and that said slave continued to reside in the house of said Irons and wife, up to the date of the aforesaid levy. The defendant introduced a marriage contract between said Irons and wife,

which was admitted without objection; and read the deposition of Mrs. S. Maxwell, without objection. She proved, also, by Edward P. Irons, that the said slave had been purchased by said James Irons, with the money of said Catherine Irons, and delivered to her as her separate property, taking the bill of sale in his own name; that the said Catherine, when the knowledge of this fact came to her, objected to the manner in which the bill of sale had been taken, saying, that as the slave had been purchased for her, with her own money, the bill of sale should have been taken in her name, and not in the name of the said James; that this was said in the presence of the said James, her husband, without objection or contradiction on his part. It was proved, also, by this same witness, that the said Catherine, living in the same house with her said husband, was in possession of said slave, from the time of the delivery aforesaid to the date of the levy, claiming title in the same, and exercising ownership and control over her. The said slave was purchased and delivered in the city of Mobile, in the spring of 1853.

"Under this state of facts, the counsel for the claimant requested the court to charge the jury,—

"1. That, if they believe that the slave in controversy was purchased by James Irons, with the money of the claimant, and that the possession of the slave was delivered by said Irons to the claimant, then she is the property of the claimant, although the bill of sale was taken in the name of the said Irons, and no deed of gift was executed.

"2. That, although the jury may believe the said slave to have been purchased with the money of the said Irons, yet, if they believe that the said slave was given to the claimant, to be held by her as her separate property, and that the possession of the slave was delivered by the said Irons to the claimant, and that this was done at a time when the said Irons was not indebted, and was not done with a view to hinder, delay, or defraud creditors,—the slave is the property of the claimant.

"The court declined to give either of these charges, and charged the jury, there being no controversy as to the evidence, to find for the plaintiff. The counsel for the defend-

ant requested the court to sign and seal this bill of exceptions, which was accordingly done," &c.

No errors are assigned on the record.

R. Semmes, for the appellant, made these points:

1. The fact is not controverted, that the money with which the slave was purchased was the proceeds of property which belonged to the wife at the time of the marriage; and it is not pretended that she ever relinquished her claim to this money, in favor of her husband. If such relinquishment had been set up, since a married woman cannot be bound by implication, it would have been necessary to adduce positive proof of it.—Forrest v. Robinson, 4 Porter, 44; 1 Dess. 181; 2 Story's Equity, 626. The parties wers married in Ohio, where, in the absence of proof to the contrary, the common law will be presumed to prevail; and the wife's property, at the time of her marriage, consisted of real estate and insurance stocks. The husband, then, on his marriage, became entitled to the rents and profits of the real estate; but the title to the stocks, being choses in action, did not vest in him, until he reduced them to possession, either by selling them, or by causing them to be transferred to his own name on the books of the company; neither of which things is shown to have been done.—Miles v. Williams, 1 P. Wms. 249; Mitchell v. Hughes, 6 Bing. 689; 2 Kent's Com. 138. When the parties removed to this State in January, 1853, the real estate was sold, and the proceeds were transmitted to the husband for and on account of the wife; but this conversion did not take place until after the parties had become domiciled in this State.

2. When the parties removed to this State, the property brought with them came under the provisions of our statute law, which abolishes the common-law doctrine as to the husband's marital rights, and raises no presumption that property brought here by husband and wife belongs to the husband rather than to the wife. Although the bill of sale was taken in the name of the husband, the delivery of possession to the wife invested her with the legal title.—Pond v. Wadsworth, 24 Ala. 513.

3. If the wife had entirely failed to establish her claim to the purchase money, yet, as there was some evidence of a

parol gift by the husband to her, the court erred in withdraw-
ing from the jury the consideration of that question.

K. B. SEWALL, *contra*, contended,—1. That the bill of ex-
ceptions shows nothing on which this court can act.    2.  That
the claimant, even if the slave were her separate property,
could not interpose a claim in her own name; that, if the
separate estate was created by deed, the trustee was the
proper party to interpose; if he refused, the only remedy was
in chancery; and if the separate estate was claimed under the
Code, the legal title was vested in the husband.—Code,
§ 1983; Bridges & Co. v. Phillips, 25 Ala. 136; Love v. Gra-
ham, *ib.* 193; Crabb's Adm'r v. Thomas, 25 *ib.* 212.

CHILTON, C. J.—Without stopping to inquire whether
the points attempted to be raised upon the bill of exceptions
are properly raised by it, it is sufficient to observe, that the
record presents the anomalous case of a proceeding *by a mar-
ried woman, in her own name, in a court of law,* to try the right
to property in a slave, which her husband purchased and took
a bill of sale for in his name, but with money which was the
proceeds of property secured by an antenuptial contract
entered into between them in the State of Ohio; the husband
having delivered the slave to his wife, and having recognized
her right to the same.    Whether, with respect to property
which the statute secures to the separate use of married wo-
men, they can thus become parties in a court of law, it is not
necessary that we should now inquire; see, however, Gerald
v. McKenzie, 27 Ala.    We know of no statute authorizing
her thus to litigate in her own name, and try the right to
property situated as this is, in a court of law.    No one would
contend, for a moment, that the common law admits of such
procedure.    The law requires that she must put in her claim
by a trustee, who has the legal title, and who therefore may
well be a party in a court of law.    If she has no trustee, or,
having one, he refuses to put in a claim and thus to protect
her rights, the court of equity will afford her ample redress,
for the reason that at law she is remediless.—Bridges & Co.
v. Phillips, 25 Ala. Rep. 136 ; Love v. Graham, *ib.* 187–193 ;
Crabb's Adm'r v. Thomas, *ib.* 216.

It is clear from the facts stated in the bill of exceptions, and about which there was no controversy, that, *at law*, the husband of the appellant was the owner of the property in controversy. He purchased and took the bill of sale to himself. His conduct, acts, or declarations, could not vest the legal interest in his wife, nor invest her with a capacity to become a suitor in a court of law to protect it. Equity can look to such transactions; but the courts of law, pending the existence of the relation of husband and wife, cannot regard them.—Gamble v. Gamble, 11 Ala. Rep. 966; Machen v. Machen, 15 *ib*. 373; Frierson v. Frierson, 21 *ib*. 555; Jenkins v. McConico, 26 *ib*. 242.

Such being our view of this case, it follows that the court did right in charging that the property was subject to the plaintiff's execution against the husband, and in refusing the charges asked by the counsel for the claimant.

Let the judgment be affirmed.