## MACHEN, Ex'r v. MACHEN.

1. A will by which two slaves were given to J. M. a married woman, " during her life, then to her bodily heirs. If there should be no heirs for said negroes and increase to go back to the heirs, and an equal division made amongst the heirs"—uncontrolled by any other clause in the will, showing that by the term *bodily heirs*, the testator meant *children*, vests the absolute estate in the first taker.

2. The slaves having been delivered to the legatee, by the executor of the testator, the entire property vested in the husband, and the repeated declarations of the husband, that the slaves belonged to the wife, will not vest the title in the wife, or prevent the executor of the husband, after his death, from recovering the slaves.

Error to the Circuit Court of Cherokee.   Before the Hon. Thomas A. Walker.

DETINUE for five slaves, instituted by plaintiff, as executor of William Machen, deceased, against the defendant in error, who was the widow of the testator. The plaintiff proved the possession of the slaves by his testator for several years before and at the time of his death. The defendant intro-

duced in evidence the will of Merry Hall, her father, made in South-Carolina after her intermarriage with plaintiff's testator, which contains the following clause: "I leave to Jane Machen two negroes, Tamer and Prince, during her life, then to her bodily heirs: If there should be no heirs, for said negroes and increase to go back to the heirs." Tamer and Prince are two of the negroes sued for, and the remainder are their increase. After the death of defendant's father, the plaintiff's testator went to South-Carolina, and there the executor of her father delivered them to her, and they brought them to Alabama. There was proof of various declarations of the testator at different times between the date of the delivery of the slaves by the executor to defendant, and the date of the death of the testator, conducing to show that he admitted and recognized the negroes as belonging to defendant and not to him. A number of charges were asked, some of which were given, and some refused; all of which however presented the question, whether, on the above state of facts, if believed, the plaintiff could recover. The charges of the court were, substantially, that if the jury believed the above facts to be proven, they should find for defendant.

The plaintiff excepted to the charges of the court, and now assigns them as error.

WOODWARD, for plaintiff in error.

Merry Hall's will creates a limitation, which the law will not allow to take effect, but vests the absolute estate in the first taker. 5 Ala. 578; 4 Kent, 213; 6 Ala. 363.

The first charge is wrong, because it would allow the will or wish of James Machen to control the law, and make the limitation in the will valid, which the law pronounces void. If however, the charge means simply that James Machen could waive his rights by mere acquiescence in the will, although the property came to his possession, it is equally erroneous. Gamble v. Gamble, 11 Ala. 966.

The case of Puryear v. Puryear, 12 Ala. 14, does not conflict with the view taken by plaintiff in error; nor does it sustain the defence, because the property claimed by the wife in that case, was in the nature of paraphernal property, which by the common law, she could retain in spite of her husband,

after his decease, and probably against his creditors. 2 Bacon, 21 ; 3 P. Wms. 337 : 2 Atkyns, 78 ; and if given by a stranger, can be held against husband. 2 Story's Eq. § 1377. The property sued for is not, and could not partake of the nature of paraphernalia, 2 Story's Eq. § 1375 '76. But if a husband can by mere permission, divest himself of title, or prevent title from vesting, then the title of the wife had its origin in his volition ; and if he did not know his rights, he could not exercise his will. To deny himself of them thus, therefore, is different from the cases which are controlled by mistake of law. But an admission of a part, under a misapprehension of his legal right, will not affect him, unless by those admissions, the interest of third persons have become involved. 4 Wend. 292 ; 4 Mass. 342 ; 7 Id. 452, 488 ; 2 Story's Eq. 1375 ; 2 Phil. Ev. C. & H's notes, 211, 212 ; 11 Ala. 964.

The exclusion of the testimony of counter declarations, was error, because the husband was at any time at liberty to assert his rights, and if the plaintiff could show he did so, he should have been permitted by the court. 12 Ala. 14.

L. E. PARSONS and J. B. MARTIN, contra.

CHILTON, J.—1. The rule in Shelly's case, which this court, and most of the courts recognizing the principles of the common law, have adopted, is, that " where the ancestor, by any gift or conveyance, takes an estate of freehold, and in the same gift or conveyance, an estate is limited, either mediately or immediately to his heirs in fee or in tail, the terms *heirs* are words of limitation, and not words of purchase." 1 Rep. 93 ; 5 Ala. Rep. 580.

Applying this rule of construction to the case at bar, we think there can be no doubt but that the limitation over, after a life estate in the defendant, " *to her bodily heirs*, and if no heirs, then to the heirs of the donor," cannot be supported. Had land been the subject of the devise, the language would clearly have created an estate-tail, and as such estate cannot be created in personal property, the first taker has the absolute estate. There is nothing in the will of Merry Hall, so far as we are informed by the bill of exceptions, to show

that the terms "bodily heirs" were used as synonymous with children, and in the absence of any thing contained in the will, thus restricting the meaning of the term, we must construe it in its general legal and technical sense, as indicating the general line of heirs of the first taker. See Darden's adm'r v. Burns' adm'r, 6 Ala. Rep. 362, and the authorities there referred to ; Polk, et al. v. Farris, 9 Yerg. Rep. 242 ; Duncan and wife v. Martin, Hall, et al. 7 ib. 519, 525.

2. It appears that while the property was upon the premises of the testator, he admitted, by repeated declarations, that it belonged to his wife, the defendant ; that it had been willed to her ; and that he had no claim to it.

It is insisted, in the argument, that the will, having vested the estate absolutely in the wife, and consequently in the husband, by reason of their legal identity, he could not divest his title, or repudiate it, by such declarations, but that being possessed of the slaves, his marital rights attached, and his executor has the right to assert his title, notwithstanding his repudiation of all claim to the property.

By the marriage, the husband became entitled to all the wife's chattels in possession. Her legal existence is merged in that of her husband, and the delivery of the property to her by the executor of Merry Hall, was a delivery to the husband. His marital rights then attached and became complete. In such case, says Mr. Clancy, 2, 3, " he takes it free from any right of survivorship in the wife ; he may dispose of it in any way during his life, or bequeath it at his death, and if he make no such disposition of it, his personal representatives, and not his wife, though she should survive him, shall have it."

In respect to the rights of the wife, arising from contracts either express or implied, and which must be reduced to possession by action at law, or, as such rights are usually called, the wife's choses in action, the husband's right is more restricted. If he die without having reduced them into possession, the wife takes them by survivorship. Clancy's Rights, &c., 4.

These are elementary and well established principles of the law, and in their application to the points presented by the record before us, clearly establish that the absolute right to

the slaves had vested in the husband, and unless the wife is entitled to hold them by reason of the husband's declarations, the plaintiff, as executor of the husband, is entitled to recover. There was no trust created by the will. The gift to the wife, at least for her life was absolute, (and we have attempted to show that it vested the entire property,) and if the property, having been delivered to the wife, did not, *eo instanti*, vest in the husband, in whom did it vest? The executor had parted with the title and possession, and both having vested in the wife absolutely, the husband's title could not have been otherwise than complete.

When personal property is bequeathed to a married woman, it only requires the assent of the executor to vest the title absolutely in the husband. It is not necessary that it should be reduced to actual possession. In Pitts v. Curtis, 4 Ala. Rep. 350, the father, by his will, gave the slave to his son, until the slave arrived at the age of twenty-one years, and the remainder of the life of the slave, to his daughter, then a married woman. The slave was delivered by the executor to the son. Held, that the husband took the remainder, notwithstanding the death of the wife before the termination of the son's estate. So, where the slave was in possession of the wife's guardian, the title vests absolutely in the husband, although the guardian retain the slave. McGehee v. Toland, 8 Por. 36. So, where the slave was hired as the property of a *feme sole*, and she married, and husband died before the expiration of the hiring, held, the absolute property vested in the husband's representative. 1 Dev. 310, 456; 4 ib. 512.

The title having vested in the husband, no contract which he might afterwards have entered into *directly* with the wife, and much less, any declaration he may have made during the coverture, could, at law, vest the property in the wife, so as to enable her to resist, successfully, the action of the husband's representative. See Gamble v. Gamble, 11 Ala. Rep. 966, and the cases there cited.

This view is conclusive of the case in this court, and the circuit court having ruled the law differently, the judgment is reversed, and the cause remanded.

· This case is clearly distinguishable from the cases cited, where the husband has never taken possession of a legacy or distributive share of the wife *quoad* husband, but holds as executor, administrator, &c., or as trustee for the wife. It is also unlike the case of Tripp, ex'r v. John, adm'r, at last term, in which the husband received and held the property in subordination to an anti-nuptial agreement entered into between himself and wife.