ISBELL vs. MACLIN ET AL.

1. A will contained this clause : " I give and beqeath to my half-sister Adeline (then unmarried) all my property, of whatever kind or description, provided she shall survive me, under the following conditions : should she marry, and have lawful issue, then said property is to go to her and her heirs ; but, in case my said half-sister should die without any lawful issue, then, and in that case, it is my will, that all my property should go from my said half-sister to ---- H., son of J. H., now living in Greenville Co., Va., to whom I give and bequeath all my property, in case of the death of my said half-sister without lawful issue, as above mentioned" : Held, that the limitation to --H. was not too remote, but that he took a vested interest in the property, on the death of the testator, subject to be defeated by the performance of the conditions annexed to the bequest to said Adeline ; that said Adeline's estate became absolute on her marriage and birth of lawful issue, and that her husband, on the birth of such issue, might alienate the entire property.

ERROR to the Circuit Court of Talladega.

Tried before the Hon. ROBERT DOUGHERTY.

DETINUE by the defendants in error, infants who sue by their next friend, for the recovery of certain slaves. After the action was commenced, and before the return of the writ, one of the plaintiffs died ; whereupon his death was suggested on the record, and plaintiffs proceeded in the name of the survivors, but defendant reserved the question of their ability thus to continue the suit.

The plaintiffs sue as the children and lawful issue of William J. Maclin and Adeline T., his wife, formerly Adeline T. Heath, and claim title under the will of Alexander W. Heath, which contained the following clause : " I give and bequeath unto my half-sister, Adeline T. Heath, all my property, of whatever kind or description, after all my just and lawful debts are paid, provided she shall survive me ; upon the following conditions : should she marry, and have lawful issue, the said property is to go to her and her heirs ; but, in case my said half-sister should die without any lawful issue, then, and in that case, it is my will, that all my property should go from my said half-sister to ------ Harris, son of Joseph Harris, now living in Greenville County, Virginia, to whom I give and bequeath all my prop-

erty, in case of the death of my said half-sister, Adeline T. Heath, without lawful issue, as above mentioned."

This will was probated in 1838, in Madison County, Alabama. Said Adeline died in 1849, before the commencement of this suit. After the marriage of said Adeline T. with said William J. Maclin, and after issue born of said marriage, the said William J. conveyed said negroes, which he had acquired by virtue of his marriage under said will, to one Rutledge as trustee, for the security of certain debts of the grantor. The negroes were sold under the deed by the trustee, and the defendant became the purchaser.

The court charged the jury, in effect, that the plaintiffs were entitled to recover on this proof; and verdict and judgment were rendered for them accordingly. The defendant excepted to the charge of the court, and he now assigns it for error, together with other rulings which it is unnecessary to notice.

The case was argued orally at the bar, by Messrs. White & Parsons for the plaintiff in error, and Messrs. Rice & Morgan for the defendants; and after the delivery of the first opinion, a re-argument having been ordered, written arguments were submitted, from which the annexed briefs are condensed, presenting only a summary of the points made and authorities cited.

WHITE & PARSONS, for plaintiff in error, contended:

1. That the literal construction of the will showed an intention to give Adeline T. Heath an estate in fee, rather than an estate for life with remainder to her children.

2. Upon the legal effect of the will, that the terms " her and her heirs" have a known, fixed, legal signification, which, in most cases, has been adhered to, even though it overturn the manifest intention of the testator, and has been rejected in no case, except upon the most manifest intention to the contrary. Shelley's Case, 1 Coke's R. 93; Price v. Price, 5 Ala. 578; Morgan v. Jones, 1 Bro. Ch. 206; Hamner v. Smith, 22 Ala. 440.

3. That, even though the estate might be regarded as a remainder in the children of Adeline T. Heath, yet it is also an estate by descent; and that being able to take either by pur-

chase or by descent, the rule is inflexible that they must take by descent.—Morgan v. Jones, *supra* ; Hamner v. Smith, *supra* ; Ewing v. Standifer, 18 Ala. 400 ; 4 Kent's Com., m. p. 217.

4. That the children of Adeline T. Heath, if they took at all other than as heirs, took a vested remainder, which, immediately upon her having issue, was executed by the ancestor in possession, and changed her estate for life into an estate tail at common law, and thus, under our law, vested the entire estate in the first taker.—4 Kent's Com., pp. 202, 203, 206, 207, 210 ; 2 Black. Com., m. p. 151 ; Darden v. Burns, 6 Ala. 365.

5. That Adeline T. Heath's estate is absolute, subjected to certain conditions ; that the conditions having been performed, the restriction is gone, and the estate resumes its original absolute nature ; that the instrument, being a will, must necessarily take effect *in futuro*, and thus the condition might be either precedent, subsequent, or simultaneous with the attaching of the estate ; that, as a matter of proof, it was precedent thereto, and the legal consequences attendant upon the case as it is necessarily flow from it.—Lord Stafford's Case, 8 Coke's R. 74 ; 2 Black. Com., m. p. 151.

6. That in giving to the term " heirs" any other than its known legal signification, the court would depart from a salutary and established rule of great importance, sanctioned and re-affirmed by numerous decisions of our own and other courts.— Shelley's Case, 1 Coke's R. 88 ; Morgan v. Jones, 1 Bro. Ch. ; Price v. Price, 5 Ala. 578 ; Ewing v. Standifer, 18 *ib.* 400 ; Hamner v. Smith, 22 *ib.* 438.

RICE & MORGAN, *contra :*
The words " heirs" and " lawful issue" are not used by the testator in their technical sense, but in their common acceptation ; he evidently uses them as synonymes, and as descriptive of the objects of his bounty, viz., the children of Adeline T. Heath born in lawful wedlock.—Moore v. Moore, 12 B. Mon. 655 ; King v. Beck, 15 Ohio 559 ; Shepherd v. Nabors, 6 Ala. 636 ; Williams v. Graves, 17 *ib.* 62 ; Powell v. Glenn, 21 *ib.*; Cox v. Beltzhoover, 11 Missouri R. 142 ; Evans v. Wells, 7 Humph. 559 ; Rives v. Frizzle, 8 Iredell's Eq. R. 237.

The bequest is to a class of persons, without any specific

designation by name, subject to increase or diminution in number by future births or deaths. The time of distribution is fixed on the happening of a future event, to-wit : the death of Adeline T. Heath. The entire interest vests in such persons only as at that time fall within the description of persons constituting such class. Under this bequest, the first born lawful child of Adeline T. Heath, at its birth, took a vested estate in remainder, which opened to let in other children to the estate, on their respective births; and such vested remainder became a fee-simple absolute in the children living at the death of their mother.—Williams v. Berry, 8 How. (U. S.) R. 495 ; Saterfield v. Mays, 11 Humph. 58 ; Shepherd v. Nabors, 6 Ala. 636 ; 1 Jarman on Wills, pp. 295, 296 ; 1 Roper on Legacies, p. 71, and cases there cited.

Adeline T. Heath took a life estate under the bequest, if she survived the testator ; no other interest or estate in her favor was to arise on any other condition. The terms " upon the following conditions," are not used in any technical sense, but merely to show that, in no event, was said Adeline to have a fee simple, absolute estate, and to point out what direction the property should take on her death ; in other words, to indicate who were the cherished objects of the testator's bounty next after her ; she was the first object of his bounty, her lawful children were the second, and Harris was the third. The ulterior limitation to Harris embraces " all the property" of the testator ; and this fact conclusively shows, that, if said Adeline married and had children, which were extinct at her death, the property should go "from" her "to" Harris, and utterly excludes the idea that he intended her to have the absolute estate if she married and had lawful issue. The omission of the words " for life," in the bequest to her, is not important when the intention otherwise appears.—McCroan v. Pope, 17 Ala. 612 ; Howe v. Fuller, 19 Ohio 51 ; Reed v. Snell, 2 Atk. 642 ; Lampley v. Blower, 3 ib. 397 ; 2 McCord's R. 92 to 101.

Although a woman marries, and has lawful issue, yet, if all such issue has become extinct before and at her death, she dies " without any lawful issue," as much so as if she had never had any lawful issue. The expression " dying without issue," when used in a will, has two senses, and two only : 1st, a vulgar sense, viz., dying without leaving issue surviving at the

time ; and 2nd, a legal sense, viz., an indefinite failure of issue.
—Target v. Gaunt, 1 Pr. Wms. 432 ; Hughes v. Sayre, *ib.*
534 ; Pleydell v. Pleydell, *ib.* 748 ; Atkinson v. Hutchinson,
3 *ib.* 258 ; Anderson v. Jackson, 16 Johns. 382, 436 ; Jackson
v. Blanshaw, 3 *ib.* 292 ; Jackson v. Chew, 12 Wheat. 153 ;
Doe, *ex dem.* Cadogan, v. Ewart, 34 E. C. L. R. 194 ; Hig-
genbotham v. Rucker, 2 Call's R. 313. It is admitted in this
case, that the expression was not used in its legal sense, for
then the remainder to Harris would be too remote ; and, of
course, it must have been used in its common acceptation.
The right of Harris is not restricted to the case of her dying
without ever having had any lawful issue, but is more enlarged :
the property was to go to him, in case of her death without any
lawful issue surviving her.

Four incidents belong to every increase of an estate by force
of a condition precedent, to-wit : 1st, a particular estate, as a
foundation upon which the increase of the greater estate shall
be built ; 2nd, that such particular estate ought to continue in
the grantee until the increase happens ; 3rd, it ought to vest
at the time the contingency happens, or otherwise it shall never
vest ; and, 4th, the particular estate and the increase ought to
take effect by one and the same instrument.—Lord Stafford's
Case, 4 Coke's R. (Part VIII), p. 75. In this case, the sec-
ond and third incidents were wanting.

It is unreasonable to suppose that the testator intended that
the very issue whose existence at their mother's death would
exclude Harris, should themselves take nothing under the will.
It would be unnatural for the testator to provide for Harris, a
stranger, at the death of Adeline T., and yet leave her lawful
issue, if living at her death, unprovided for ; and an unnatural
construction is never favored.—2 Burr. 771 ; 3 Atk. 525 ; 3
Murph. 31.

It is a certain rule, in the exposition of wills especially, that
effect shall be given to every word—that " every string should
give its sound."—Baker v. Giles, 2 Pr. Wms. 280 ; Edens v.
Williams, 3 Murph. 27 ; 3 Atk. 524 ; 2 Burr. 770 ; 12 Mass.
447. The necessary effect of the construction which would
give Adeline T. Heath a life estate, to be enlarged into an abso-
lute fee-simple estate upon her marriage and birth of lawful
issue, is, to entirely expunge from the will the important words

" *and her heirs.*" If those words are to have no meaning, why were they inserted? The expression " is to go," strikingly denotes a succession of possessors—the transition of said property to the first person named, and next to those who are next described.

The construction for which we contend, gives effect to every word in the will, harmonizes every provision, and accords with the dictates of reason, justice and nature, and with rules of law sanctioned by the wisdom of ages.

GIBBONS, J.—It is contended by the plaintiff in error that the limitation over to ——— Harris is too remote, and therefore void; and this limitation being void, that the first taker, Adeline T. Heath, (afterwards Maclin,) took an absolute estate under the will.

The words of the limitation are: " but in case my said half-sister should die without any lawful issue, then, and in that case, it is my will, that all my property should go from said half sister to ——— Harris," &c. The words " *without lawful issue,*" uncontrolled or unexplained by any other words or expressions in the will, limiting the failure of issue to any specific time, would undoubtedly be a limitation too remote, and void as an executory devise. This was the doctrine held in this court, in the case of McGraw v. Davenport, 6 Porter 317. In that case, certain slaves were devised to two of the daughters of the testator, named Louisa and Cynthia, and then followed this clause: " *Or should either of them die without issue, the other is to get the whole of the seven negroes and their increase.*" *Held*, that each of the daughters took an absolute estate. Also, in Darden v. Burns, 6 Ala. 362, the testator, after devising certain property to his daughters, adds the following clause: " My meaning is, the heirs of my daughters above named are to inherit the above bequests; and if no lawful heirs of their bodies, then to revert to the family estate:" *Held*, that the daughters took an absolute estate. Again; in the case of Machen v. Machen, 15 Ala. 373, the words of the bequest were: "I leave to Jane Machen two negroes, Tamar and Price, during her natural life, then to her bodily heirs. If there should be no heirs, for said negroes and increase to go back to the heirs:" *Held*, that Jane Machen here took the entire estate.

In Allen v. White, 16 Ala. 185, a bequest to one son, in trust for another son, " *his family and lawful children, which he now has or may hereafter have, and the survivor of them,* was held a limitation too remote, and the first taker took an absolute estate. Also, in Standifer v. Ewing, 18 Ala. 400, the words of the bequest were : " I lend to my daughter Lydia Standifer, during her natural life, five negroes," &c. " These five negroes, with all their increase, I *will to the lawful begotten heirs of Lydia Standifer, to be equally divided among them at her death : Held*, that these words created an absolute estate in the first taker. In this last case, however, it is proper to re-mark, that the decision is not placed upon the ground that the limitation was too remote, but that the word " heirs" in the bequest was to be taken as a word of limitation, and not of pur-chase ; that the words of the bequest presented a case, where the persons designated could take both as heirs and purchasers ; and applying to them the rule well established in such cases, they must take as heirs, and not as purchasers.—4 Kent's Com. 217, and cases cited. These cases, we think, sufficiently show, that the rule in Shelley's case, in all cases where it is applica-ble, is now established in this State as a law of property ; too well established, indeed, to be questioned or overruled by sub-sequent judicial decision. In analogy to this rule, it is held, that where words are employed by a testator, which, if applied to realty, would create an estate tail, they create an absolute estate when applied to personal property.—4 Kent's Com. 227.

But, whilst we acknowledge the binding force of the rule in Shelley's case, and entirely concur in the views expressed by this court in the cases above cited, it is equally true, as a prin-ciple, that the intention of the testator must be regarded, and carried out, if consistent with the law ; and the whole will must be examined, to see if it is an indefinite failure of issue which is meant, and which the law forbids, or whether it is a failure of issue at a particular point of time, which the law sanctions.— 4 Kent's Com. 228. Courts often seize upon slight circumstan-ces to take the case out of the rule, and sometimes, in their avidity to avoid what appears to be a severe restraint upon the alienation of property, according to the supposed wishes of the testator, do violence to sound rules of interpretation. Our view is, that these rules should be honestly applied to each case,

as it arises, and if, by a fair construction, it can be gathered that the testator meant to tie up the limitation to a particular point, not prohibited by law, that intention should be upheld by the courts; but if it is not so limited, it should be declared void. In Woodley v. Findlay, 9 Ala. 716, the words of the bequest were: "I lend unto my grand-daughter, Mary Foster, one negro girl, called Little Dinah, during her natural life; and at her death, I give and bequeath the said negro girl and her increase to the lawful issue of her body that may then be living, to them and each of them, share and share alike, their heirs and assigns forever; but, should the said Mary die without lawful issue, then to go to her sisters, share and share alike." Here the limitation to the sisters is expressed in language not unlike that employed in the case at bar. This limitation was held good, because, says the court, "it is evident, the testatrix contemplated the remainder to vest in them (the sisters) during their lives." In Dunn v. Davis, 1. Ala. 135, the words of the bequest were: "I give to my daughter Minna, during her natural life, and at her death to her heirs or children, my negro man Abram:" *Held*, that the daughter Minna took only a life estate, and that the words "heirs or children" were words of purchase, and not words of inheritance, (Goldthwaite, J., dissenting). Also, in Shepherd v. Nabors, 6 Ala. 636, a deed was made of a certain negro to the heirs of a certain daughter of the grantor, *born of her body*, the grantor reserving a life estate in himself: *Held* to be good as an executory devise, and that the heirs of the daughter, born of her and living at the death of the grantor, took under the deed. In Williams v. Graves, 17 Ala. 62, the words of the limitation were: "It is hereby declared to be my intention, that the negroes willed and devised to my said daughters is for the support and maintenance of the heirs of their bodies begotten or to be begotten; if either of my said daughters should die without an heir of her body begotten, the property of this one to pass off and become the property of the surviving daughter and my two sons and their heirs; each one to have an equal share of the property willed to the daughter so dying without heirs:" *Held*, that the term "*surviving*" limits the meaning of the words "*die without an heir of her body begotten,*" to issue living at the death of the first taker. So, in Flinn v. Davis, 18 Ala. 132, per C. J. Dargan, the court,

however, expressing no opinion, where a testator bequeaths personal property to his daughter and the heirs of her body, and if she dies without *leaving lawful issue from her body* then over : *Held*, that the word " *leaving*" limited the meaning of the words " *issue from her body*," to issue living at her death, and the limitation was good as an executory devise.

We have cited the latter class of cases, to show that, in reference to wills, it is a rule of construction in this court, to examine the instrument, and if it can be fairly gathered from the expressions used by the testator, that he intended a definite limitation within what the law allows, the court will give it that interpretation, although the words employed by the testator, taken in their technical sense, and disconnected from other expressions, would import an indefinite limitation, and one forbidden by law.

Let us now test this will by this rule.    The words are : " but *in case my said half-sister should die without any lawful issue, then, and in that case,* it is my will, that all my property should go *from* said half-sister, *to* —— Harris, son of Joseph Harris," &c., " to whom I give and bequeath all my property, in case of the death of my said half-sister, Adeline T. Heath, without lawful issue, as above mentioned."    When is this limitation to take effect, and become an absolute property in —— Harris ? The words of the testator answer the question : " *then, and in that case,* that is, on the death of the first taker without lawful issue.    This construction receives further confirmation from the subsequent words of the will: " In default of *lawful issue* at the death of the first taker, the property was all to go *from* the said Adeline T. *to* the said —— Harris ;" thereby excluding the idea of any intervening party taking the property after the death of Adeline T. before it passed to —— Harris.    We think attention to this phraseology of the will brings the mind to the irresistible conclusion, that the testator meant a failure of issue at the death of Adeline T. Heath.

In arriving at this conclusion, we are not aware of doing violence to any sound rule of interpretation, but give to each phrase and expression of the will its full force and effect, as part and parcel of the same instrument.    Our conclusion is, that the limitation to Harris is not too remote, but good ; and that he took, on the death of the testator, a vested interest in the prop-

erty, subject, however, to be defeated, on the performance of the conditions annexed to the bequest to the first taker.

We have not thought proper to review, in this opinion, the English cases cited on the argument, nor those of our sister States. They are very numerous, often conflicting; and in some is to be found, we think, a departure from well established principles. This review has been made by this court in many of the cases above cited, and we are satisfied with their conclusions, as there expressed, so far as those decisions affect the present case.

The next question presented is, what estate did Adeline T. Heath (afterwards Maclin) take under this will? It is contended on the part of the defendants in error, that she took only a life estate, and that on her death her children, the plaintiffs in the court below, became invested with the title to the property, as purchasers from the testator. On the other hand, it is contended by the plaintiff in error, that she took a life estate only in the event that she died *without lawful issue*; but that when she married and *had lawful issue*, her estate became absolute.

In the construction of wills, it is admitted, that the intention of the testator, if it can be arrived at, and if it is legal, makes the law of the case. What estate, then, did the testator intend that Adeline T., the first object of his bounty, should take under this will? It is clear, that, if she outlived him, and died without lawful issue, she would take but a life estate; and at her death without such issue, it is expressly provided that the property should go from her to Harris. But how does it appear from the will that she was to take only a life estate in any event? The first bequest was to her, provided she outlived him; not for life only, but to her without any qualification whatever, except that she outlived him. But it is not yet determined what estate she shall take. That remains yet to be fixed by the testator; and then follows this clause. "*upon the following conditions : should she marry, and have lawful issue, the said property is to go to her and her heirs.*" This is the largest estate that any one can possibly have in property, an absolute fee simple title. It would seem that the testator had in his mind two prominent ideas in the disposition of his property, and but two: one was, to give his half-sister an absolute estate, on the happening of certain contingencies; and

the other was, in case those contingencies did not happen, then to limit her to a life estate, with remainder over to —— Harris. The first object is now accomplished, by his will, and then follows the clause affixing the contingency: "*but in case my said half-sister should die without any lawful issue,*" &c., by which the property is limited over, and she confined to a life estate.

We cannot presume that the testator intended to provide for the issue or children of his half-sister as purchasers, for they were not then in being. Besides, that would be to cripple and diminish the estate, which the first object of his bounty was to take. Instead of taking from him an absolute property, that would be limiting her to a life estate, and in favor of persons not yet in existence. We think the plain intent of the will is otherwise. The word "heirs" is no where else used in this will, and seems to be employed by the testator here, for the express purpose of measuring the estate that the first object of his bounty was to take. The word seems to be employed, not as a word of purchase, but as one of inheritance ; and we think that it was the intention of the testator to employ it in this sense. It does not seem to be used as synonymous with lawful issue, but in a more enlarged sense. So far from limiting her to a life estate in any or every event, we think it clear, that it was but in one event that he so limited her, and that was, that she died without lawful issue. We arrive at this conclusion very naturally, first, because this is the legal import of the words upon their face, when considered all together ; and, secondly, from the circumstances under which the will seems to have been made. It is apparent from the will, that the first object of the testator's bounty was his half-sister, Adeline T., and rather than have his property go to collateral heirs, he preferred limiting it over to —— Harris. But if this first object of his bounty produced a line of lineal descendants, he was satisfied, and there was no longer any occasion for the limitation over.

Our conclusion is, from a careful examination of this will, that Adeline T. Heath took under it an estate for life, in any event, if she survived the testator ; and if she married, and had lawful issue, then her estate became absolute ; but, if she had died without lawful issue, then she would have had but a life estate, and the remainder-man would have taken.

It follows, as a necessary consequence, that the husband of Adeline T. Heath, by his marriage, acquired her rights, and, on issue being born, he became invested with the absolute title to the property, and could alienate it by deed. As the defendant traces his title by conveyances directly from William J. Maclin, the husband, his is therefore the better title, and the court below erred in its instruction to the jury. As this view of the case necessarily disposes of it finally, we have not thought it necessary to consider the other question presented by the bill of exceptions.

The judgment of the court below is reversed, and the cause remanded.

CHILTON, C. J., not sitting.

NOTE by Reporter.—A rehearing having been granted after the delivery of the foregoing opinion, the following opinion was afterwards pronounced:

GIBBONS, J.—A re-hearing was awarded in this case, for two reasons: first, because the circumstances of the case, with the amount of property involved, rendered it important; and, secondly, because the court felt a sincere doubt of the correctness of the conclusions to which it had arrived as announced in the opinion delivered in the case, and wished to test the correctness of those conclusions by further examination and reflection. This has been bestowed upon the case, and the court still feels bound to adhere to the conclusions announced in the opinion delivered. That opinion announced and decided two propositions: first, that the limitation to —— Harris was not void, as being too remote; and, secondly, that on the marriage and birth of issue by Mrs. Maclin, her estate became absolute. In the announcement of the conclusion upon the first of the above propositions, the court may have used language calculated to mislead, and, in fact, thereby have given rise to the error into which the counsel of the defendants in error have fallen, in supposing that the limitation was pronounced valid because it was confined to issue living at the time of the death of the first taker. This is not the meaning of the court. The death of the first taker is certainly the period beyond which the con-

tingency cannot happen on which the estate of Harris is made to depend ; and being limited by her death, therefore, is not too remote. The estate of Harris, whether it be a vested or a contingent remainder, according to the strict definitions of those terms as laid down by Chancellor Kent, (*vide* 4 Kent's Commentaries, 203 to 207,) is undoubtedly an estate subject to a condition or contingency ; and the very condition or contingency which renders the estate absolute in Mrs. Maclin, defeats the estate of Harris. The true construction of the will is, that Harris takes the estate, if the first taker dies without having had lawful issue ; and, *vice versa*, on the first taker having lawful issue, her estate becomes absolute, and the estate of Harris is defeated by the happening of the contingency on which it is made to depend. It matters not whether the issue of Mrs. Maclin was living at her death or not, so far as respects the estate of Harris. On the issue being born, his estate is divested or defeated, and can never revest by a subsequent failure or death of the issue. With this explanation, there is no incongruity or incoherence in the opinion delivered by the court that we are able to perceive ; and we are satisfied, that the conclusions announced on the construction of the whole will, are correct. But it is contended, that the phraseology of the will contains another limitation to the heirs or children of the first taker, and it is on that supposed right that the present action is based. To this construction of the will there are unsuperable obstacles, under the decisions of this court. It is the established doctrine of this court, that, when the language of a will is such that a named class of persons may take as heirs or purchasers, they must take as heirs, and not as purchasers.— Ewing v. Standifer, 18 Ala. 400. The same doctrine was reaffirmed in the case of Hamner, adm'r, v. Smith, 22 Ala. 433, after the most careful examination which the principle involved could receive at the hands of the court. Applying this principle to the language of the will under consideration, it is decisive of the question ; for no one can contend, for a moment, as it seems to us, that under the language of the will, the plaintiffs, as the issue of Mrs. Maclin, cannot take as her heirs, and if they can so take, then they must so take, and that would make the estate of the first taker absolute.

Again ; concede, for the sake of argument, that the proper

construction of the limitation to Harris is, that it is made to depend upon issue living at the death of the first taker; then the word "heirs" is employed to designate the objects in whom .is to vest the second remainder on the birth of lawful issue from Adeline T. Heath. What authority have we under the will for confining the word "heirs" to children, or lawful issue of the first taker? The remainder must vest in any one that answers the description of heir. Children, or lawful issue, certainly would fill that description, and could claim that the remainder had vested in them. But so, also, could the remotest descendants of such children or lawful issue; and so, also, could the collaterals of the first taker. Suppose, then, the case to have happened, that there were no children, or lawful issue of the first taker, alive at her death, but there were found descendants of such children or lawful issue. Who would take the property, they or Harris? Again; suppose there were no children, or lawful issue, or descendants of such, on the death of the first taker, and Harris, coming to claim the estate, is met by a collateral, who claimed to fill the requirements of the will, as heir to the said Adeline. Who then would take? And who could say that such collateral did not fill the description of persons designated in the will, as being entitled to the remainder? We have indulged in these suggestions, merely to show the difficulties that will at once spring up when we depart from well established principles. We think it safer to adhere to them; and, as we understand them, as applicable to the will under consideration, they are opposed to the rights set up by the defendants in error.

The first opinion pronounced by this court, with this explanation, must be permitted to stand, and the judgment must be entered accordingly.

CHILTON, C. J., not sitting.