## SHACKELFORD vs. BULLOCK.

[BILL IN EQUITY FOR REFORMATION OF ANTE-NUPTIAL CONTRACT.]

1. *Deed of marriage-settlement construed, as to meaning of "heirs of the body," and "natural heirs."*—Where a deed of marriage-settlement, by which the wife's property, real and personal, was conveyed to a trustee for her sole and separate use, contained the further provisions, that if the wife survived her husband, and then died leaving heirs of her body, "the said property shall vest absolutely in such *heirs of her body* ;" and that if the wife died before her husband, "*leaving no heirs of her body*, then, and in that case, the said property shall vest in and belong to her *natural heirs*, discharged of all trusts,"—*held*, that *heirs of the body* meant children ; that the contingent remainder to the *natural heirs* of the wife was not too remote ; and that the rule in Shelley's case did not apply, because the wife's estate was equitable, while that of her heirs was legal.

2. *Laches.*—Equity will not impute laches to a party, on account of his failure to institute judicial proceedings, until it is possible for him to institute a suit in which a decree might be rendered concluding the parties interested adversely to him ; as where he seeks the reformation of a deed, and the only parties adversely interested cannot be ascertained until the death of a person having a prior life estate.

3. *Parties to bill for reformation of deed.*—To a bill filed by the husband, asking the reformation of a deed of marriage-settlement, on the ground of fraud or mistake, in the insertion of a provision giving a contingent remainder, on the death of the wife leaving no children, to her "natural heirs," instead of the husband,—the "natural heirs" of the wife, who cannot be ascertained until her death, are necessary parties ; and their interests cannot be represented by any other parties.

APPEAL from the Chancery Court of Macon.

Heard before the Hon. JAMES B. CLARK.

THE bill in this case was filed by John Shackelford, against the heirs-at-law of his deceased wife, whose maiden name was Maria L. Turner; and sought the reformation of an ante-nuptial contract executed by the complainant and his said wife, so as to make it provide that, on the death of the wife leaving no children, the property conveyed should go to the complainant, instead of the heirs of the wife. The complainant and his said wife were married, in this State, on the 25th January, 1842; his wife died on the 3d February, 1855; and the bill was filed on the 19th October, 1855.

The bill alleged, that the complainant and his said wife, prior to their marriage, agreed to execute a marriage-settlement of all the property then owned by the wife, which consisted of lands, slaves, money, and choses in action; and that the terms of this contract were agreed on, and were reduced to writing, but the writing was never signed by the parties. The writing referred to, which is made an exhibit to the bill, conveyed the property to Green Wood, as trustee, on the following trusts, limitations and conditions: "In special trust and confidence for the sole use and maintenance of the said Maria L. Turner, and the child or children that may be born of her body under the marriage aforesaid; the said Maria to take and keep possession of the said property, and to enjoy the free use of the same in every respect whatsoever; and the said property not to be liable for any debt or debts of the said John Shackelford, now contracted, or that may be hereafter contracted by him; the said trustee not to be held liable for any of the hire or profits of the said property. And in the event that the said John Shackelford should die, leaving the said Maria L. Turner surviving, with issue, then, and in that case, the said property is to vest in the said Maria L. Turner and the child or children of her body; but, should the said Maria L. Turner die first, leaving issue, then, and in that case, the said property is to go to the surviving child or children of the said Maria L. Turner; and should there be no children by the marriage, then, and in that event, if the said John Shackelford should die first, the said property is to belong to the said Maria L. Turner in her own right; *and if the said Maria L. Turner should die before the said John Shackelford, then the said property, there being no issue from the marriage, is to vest solely in the said John Shackelford.*"

The bill further alleged, that when this writing, which truly expressed the original agreement of the parties, was read over to them in the presence of their friends, it was agreed that Julius C. Turner, who was a brother of said Maria L. Turner, should be substituted as trustee instead of Wood, and that the deed should be so changed that,

" in the event of the death of said John Shackelford, leaving the said Maria L. surviving with issue, the said Maria L. should have the control of during life, or a life estate in the whole property;" that James A. Bullock, who had married a sister of said Maria L. Turner, and who was present on the occasion referred to, then took the writing, and promised to have another instrument drawn, which should contain the alterations above mentioned, and the parties consented that he should do so; that said Bullock procured an attorney to draw up another deed, in which he fraudulently had inserted, instead of the last provision in the original deed, a limitation in favor of the " natural heirs " of the said Maria L. Turner, in the event of her death without children before her husband; that this deed was never seen by the parties, until the marriage ceremony was about being performed, and was then executed by them, without reading it, under the belief that it contained only the provisions to which they had agreed; that the mistake in the deed was discovered by the complainant a few weeks after his marriage, and was communicated by him to his wife, whose brothers and sisters then agreed that another deed should be executed, truly expressing the contract between the parties; that the execution of this deed was delayed, from time to time, until the death of some of the parties prevented its consummation; that afterwards, in 1852, complainant consulted with his attorneys, with the view of filing a bill for the reformation of the deed, and was informed by them that it was unnecessary, inasmuch as his wife, there being no issue of the marriage, had a right to dispose of the property by will; that his wife promised to make a will in his favor, but died intestate, leaving no children; and that he did not discover, until after the death of his wife, that the mistake in the deed was the result of premeditated fraud on the part of Bullock.

By the deed actually executed by the parties, a copy of which is made an exhibit to the bill, the property is conveyed to Julius C. Turner, as trustee, " upon the following conditions and limitations: That the said Maria L. Turner shall be permitted and allowed to have the sole

and separate control of said property, and that the same shall not be liable or subject to the debts, contracts or engagements of her said husband, either now made, or hereafter to be made, nor the rents, profits or hire thereof, to be subject to his debts as aforesaid; but the said trustee is not to be liable for said rents, profits or hire, unless he should take the said property into his possession and control. And it is further provided and agreed, that should the said Maria L. die before her said intended husband, leaving heirs of her body, the said property shall vest in and belong to said heirs absolutely, discharged of the said trust; and should the said John Shackelford die before his intended wife, as aforesaid, the said trustee shall hold the said property for the use of said Maria L. and the heirs of her body, if such there should be, and, upon the death of said Maria L., the said property shall vest absolutely, as aforesaid, in such heirs of her body as may be living at her death; *and should there, at the death of the said Maria L., be no heir or heirs of her body, then to vest absolutely, discharged of all trusts, in her natural heirs.* And the said Julius C. Turner is hereby authorized and empowered, whenever it shall be conducive to the interest of the said Maria L., by and with her consent, to be manifested by her joining in the conveyance, to sell and dispose of all or any of the property hereby conveyed, and to re-invest the proceeds of such sales in other property, to be held upon the like trusts and conditions as before expressed. And it is further expressly agreed and understood, *that should the said Maria L. die before her intended husband, leaving no heirs of her body, then, and in that case, the property above conveyed shall vest in and belong to her natural heirs, discharged of all trusts.*"

The chancellor dismissed the bill, on motion, for want of equity, on the ground that the plaintiff's claim to relief was barred by his laches and the staleness of his demand; and his decree is here assigned as error.

WM. P. CHILTON, WATTS, JUDGE & JACKSON, and ELMORE & YANCEY, for the appellant.—1. The legal bar of the statute of limitations, and the analogous rule which

obtains in equity respecting state demands, are alike intended to protect adverse possessors against outstanding claims, and have no application in this case. Here, there never was an adverse possession : the complainant himself held the uninterrupted possession of the property; his wife acquiesced in the claim which he now asserts, and the other parties in interest promised to rectify the alleged mistake. In such case, neither the legal bar of the statute, nor the equitable rule respecting stale demands, presents any obstacle to the relief sought. Shearman v. Irvine's Lessee, 4 Cranch, 367 ; Kirk v. Smith, 9 Wheat. 241; Alexander v. Pendleton, 8 Cranch, 462 ; Base v. Gray, 4 Wheat. 214 ; Richard v. Williams, 7 Wheaton, 59; McClung v. Ross, 5 Wheaton, 116; Zeller's Lessee v. Eckert, 4 How. (U. S.) 289 ; Abercrombie v. Baldwin, 15 Ala. 363 ; Herbert v. Hanrick, 16 Ala. 581; Boyd v. Beck, 29 Ala. 703; Crofton v. Ormsby, 2 Sch. & Lef. 603 ; Miller v. Bear, 3 Paige, 466; Prevost v. Gratz, 6 Wheaton, 481; Barbour v. Whitlock, 4 Monroe, 181; 2 J. J. Mar. 179 ; 1 Wash. C. C. 18; 3 Bro. C. C. 639.

2. Equity will not impute laches to a party, on account of his failure to resort to judicial proceedings, until he has a right to sue, and until there is some one *in esse* whom he may sue. The complainant in this case had no vested right until the death of his wife, and there was no one in being whom he could sue, as having an adversary interest. If the wife had resisted, instead of admitting the justice of his demand, and he had brought suit against her, the parties now claiming under the ulterior limitation to her "natural heirs," being neither parties nor privies, would not have been bound by the decree. The rule invoked by the appellees, which allows the holder of a prior estate to represent those having an ulterior interest, applies only to cases in which the ulterior limitations are dependent on the prior right of the party before the court, who, therefore, represents the whole estate.—Calvert on Parties, 50; Adams' Equity, 315; Allen v. Allen, 4 Irish Eq. R. 472; Mitford's Eq. Pl. 173–4; Lloyd v.

Johnes, 9 Vesey, 39; Gaskell v. Gaskell, 6 Sim. 643; 2 Y. & Col. 597.

D. W. BAINE, with whom were D. CLOPTON, and MARTIN, BALDWIN & SAYRE, *contra.*—1. Under the original marriage-settlement, alleged to have been reduced to writing but never signed by the parties, the complainant took a contingent remainder in the property. Such an interest is deemed valuable in law, and is the subject of alienation and transfer before the contingency happens. Fearne on Remainders, 363; Keyes on Chattels, 306. Of this interest the complainant has been deprived by the alleged fraud of Bullock. This fraud, then, worked a present injury, for which a cause of action then accrued; and the statute of limitations then began to run, although the damage consequent on the fraud had not been ascertained.—Wilcox v. Plummer, 4 Peters, 172; Utica Bank v. Childs, 6 Cowen's Rep. 238; Governor v. Gordon, 15 Ala. 78; 7 Ala. 187; 16 Ala. 787; 3 Term Rep. 56. In the absence of an averment to the contrary, the law presumes that the possession of the property in the mean time has been with the title; that is, with the trustee, for the separate use of Mrs. Shackelford, during her life, and with the defendants since her death.—Cole v. Varner, 31 Ala. 244; 17 Ala. 573; 15 Ala. 671; 2 Swan, 480.

2. It is said, that no decree could have been rendered during the life of Mrs. Shackelford, which would have bound the present defendants, because they were not *in esse*, and could not have been made parties. If this position be correct, it presents the anomalous case of a man having an undoubted present right, the remedy for which is postponed until the happening of an event which destroys the right itself; in other words, the law admits the complainant's right, but denies him any remedy for an injury to it until the right itself has become worthless. In behalf of this position the general rule is invoked, that all persons materially interested in the suit, or in the subject of it, ought to be made parties. But this general rule is "not founded on any positive or uniform principle"; "is open to exceptions, qualifications, and limita-

tions," all of which are declared to be governed by the principle, "that as the object of the general rule is to accomplish the purposes of justice," "and is founded in some sort upon public convenience and policy, rather than upon positive principles of municipal or general jurisprudence, courts of equity will not suffer it to be so applied as to defeat the very purposes of justice, if they can dispose of the merits of the case before them without prejudice to the rights or interests of other persons, or if the circumstances of the case render the application of the rule wholly impracticable."—Sto. Eq. Pl. §§ 76 c, 77, 135 a. If, then, the application of this general rule be discretionary with the court, what stronger case can be presented for the exercise of that discretion than the one now before the court? The rule which allows and requires representation of parties, grew out of the necessities of cases in which there would be a complete failure of the complainant's remedy, because parties who were interested were not *in esse*, unless he was allowed to bind them by proceeding against parties who had prior estates. The doctrine of representation exists in every case, where the preservation of a right renders it necessary to proceed in equity against contingent remainder-men not *in esse*; and the doctrine is peculiarly applicable to the case at bar.—Gifford v. Hart, 1 Sch. & Lef. 408; Cockburn v. Thompson, 16 Vesey, 325; Fletcher v. Tollett, 5 Vesey, 14, note; Calvert on Parties, 49, 52–3, note; Baylor v. DeJarnette, 13 Grattan, 166; Hildreth v. Elliott, 8 Pick. 293; Bradley v. Piexoto, 3 Vesey, 324; Sohier v. Williams, 1 Curtis, 479; 1 Dan. Ch. Pr. 374; Mitford's Eq. Pl. 173; Story's Equity Pl. § 145.

A. J. WALKER, C. J.—The chancellor having dismissed the complainant's bill for want of equity, its allegations are to be taken as true. We shall, therefore, in this opinion, speak of and treat them as facts.

The complainant, John Shackelford, and Maria L. Turner, were married on the 25th January, 1842. The terms of a contract were agreed upon between them before the marriage, and were committed to writing. They, as

far as it is necessary to notice them in this opinion, were to the effect following: *The property of Maria L. Turner was conveyed to a trustee, to have and hold in trust for her and the child or children of the contemplated marriage. If Maria L. Turner should survive her intended husband, having issue, then, and in that event, the property was to vest in her and her children. If Shackelford should survive his intended wife, then the property was to go to her child or children. If there were no children of the marriage, the property was to go to Maria L. Turner, if she survived her husband; and if there were no children of the marriage, the property was to go to Shackelford, if he survived his wife.* After the reduction of the terms of the agreement to writing, an alteration was agreed upon, to the effect following: *That a different person should be the trustee, and that in the event of Maria L. Turner's surviving her intended husband, having issue, she should have the control of, during her life, or a life estate in, the whole property.*

A person present when the alteration was assented to, agreed to procure the writing of a contract containing the terms of the agreement as altered. That person fraudulently procured a contract to be written, varying in its provisions from the agreement, and presented it for execution, as the parties were about to enter upon the performance of the marriage ceremony. The written contract was then executed, without reading it, under the belief by the parties that it corresponded with the previous agreement. The only variation of the written contract from the agreement of the parties, necessary to be here noticed, is made by the last clause, which is in the words following, to-wit: *"Should the said Maria L. die before her intended husband, leaving no heirs of her body, then, and in that case, the property above conveyed shall vest in and belong to her natural heirs, discharged of all trusts."*

The phrase, "heirs of the body," in this clause, qualified by the context, clearly means children.—McVay v. Ijams, 27 Ala. 238; Isbell v. Maclin, 24 Ala. 315. The clause may, therefore, be read thus: "Should the said Maria L. die before her intended husband, leaving *no children*, then, and in that case, the property above conveyed

28

shall vest in and belong to her natural heirs, discharged of all trusts." The estate vested in Maria L. Turner by the marriage-settlement was a trust estate; and the trust could not be regarded as converted into a legal estate, because the duties imposed upon the trustee are such as render it necessary to preserve and keep open the trust. Hill on Trustees, 232, 233, 234. The written contract directs that, in the designated contingencies, the heirs shall take the property "discharged of all trusts." The heirs take, therefore, if they take at all, a legal estate. The ancestor's estate being equitable, and the estate to the heirs legal; or, in other words, the two estates being of different quality, the rule in Shelley's case does not apply, and the word *heirs* is a word of purchase.—1 Fearne on Rem. 51; Keyes on Realty, 39, § 71. The limitation over to the "natural heirs" is not too remote.—Isbell v. Maclin, 24 Ala. 315, and authorities therein referred to.

Under the executed settlement, those persons who might be the collateral heirs of Mrs. Shackelford at her death, took a contingent remainder. The contingency upon which the remainder depended, under the clause above copied, was the death of Mrs. Shackelford without children, in the life-time of her husband. In the very same contingency, the property would have gone to Shackelford, under the agreement fixing the terms of the settlement. The contingency has now happened; and the conflict between the right of Shackelford under the contract actually made, and the right of the heirs under the written settlement fraudulently imposed upon the parties, arises. Shackelford asks by the bill a reformation of the written instrument, so as to make it correspond with the agreement which the parties directed to be reduced to writing, which they intended to execute, and which they thought they were executing.

[2.] The chancellor decided, that the complainant's right to relief was lost by laches and lapse of time. A period of more than thirteen years intervened, between the discovery of the fraud perpetrated upon complainant, and the commencement of the suit; but the suit was commenced about nine months after the death of Mrs. Shackelford.

Equity could not permit the imputation of laches against the complainant, until it was possible for him to commence suit, in which a decree could be rendered concluding those having a direct interest against the reformation of the contract. He could not sue until there was a person in being against whom he could institute judicial proceedings. The only persons interested in the reforma tion of the deed, in the particular in which it misrepresented the intention of the parties to his prejudice, were those who, at the death of Mrs. Shackelford, might be her collateral heirs. Who would be the collateral heirs of Mrs. S. at her death, it was impossible to know while she lived. It could not be assumed, that those who would have been her heirs if she had died at the time when the fraud was discovered, or their descendants, would be such heirs when her death occurred. Intervening deaths might, before she died, have exterminated the entire families of those who would have stood in the relation of heirs to her when the fraud was discovered. Until the death of Mrs. Shackelford, the persons adversely interested could not be known; and it was, therefore, impossible to institute suit against them.

[3.] To the general rule, that the persons interested must be parties to a chancery suit, there is an exception, founded on the doctrine of representation. There are cases, in which parties as plaintiffs are permitted voluntarily to assume, or as defendants are involuntarily charged with, the representation of the rights of persons not before the court. One may sue on behalf of himself and others similarly situated, and a bill may be filed against some persons, on behalf of themselves and all others opposed to the plaintiff's claim, where the parties would otherwise be so numerous that it would be impossible to bring them before the court. But it must be observed that, in such cases, the representation of those persons not parties, by those who are, is only tolerated where all have a common interest in the entire object of the suit, or a common interest in opposing the object of the suit.—Calvert on Parties, 41, (17 Law Library, 25;) ib. 43; Mayor of York v. Pilkington, 1 Atk. 284. It is also permitted, that he

who is entitled to the first vested estate of inheritance shall. represent those entitled in remainder or in reversion ; and it is sufficient to bring the tenant for life before the court, where those who are to take in remainder are not *in esse.* 1 Daniell's Ch. Pl. & Pr. 274, 275 ; Story's Eq. Pl. §§ 144, 145.

This doctrine of representation is predicated, in part, upon the convenience and necessity of the thing; but it is also founded upon the supposition, that the community of interest between the parties to the suit and those whom they represent, will secure a faithful representation. Hence it is, as above stated, that one party can never sue or be sued on behalf of other numerous absent parties, unless there is a community of interest in the question to be decided.   And so a tenant in tail, or for life, can never represent those in remainder, or in reversion, unless there is an interest in the question common to the representative and to those represented.   The "important principle in favor of the doctrine is, that in the person of the" representative "there is brought before the court one whose interest is of such a nature, as to insure his giving a fair trial to the legal right."—Calvert on Parties, 50, 41.

If a suit should be brought, which affects the entire fee, it is sufficient to bring before the court the persons whose estates make the first inheritance ; because the suit reaches the entire fee, and affects those having the first estate of inheritance, as well as those entitled in remainder or in reversion ; and there would be an identity of interest in the question between the parties before the court and those not brought before the court.—Calvert on Parties, 189.   In the case of Gifford v. Hart, 1 Sch. & Lef. 408, this doctrine is treated as applicable to those cases which relate "to the whole estate," and, consequently, affect alike the tenant in tail or for life, and the remainder-man or reversioner.   Lord Eldon, in his opinion deciding the case of Lloyd v. Johnes, 9 Vesey, 57, distinguishes between the cases where the remainder-man is and is not bound by the decree against the tenant in tail ; and allows to the decree an operation against the remainder-man in the case where the suit is not founded upon contract by the

Shackelford v. Bullock.

tenant in tail, but is brought to bind the land in respect to charges created by the author of the gift, and imposing them, therefore, upon all who take *per formam doni.* Story's Eq. Pl. 144, note 1, and § 147; Long v. Yonge, 2 Sim. 384; Pelham v. Gregory, 2 Eden, 521; Eagle Fire Ins. Co. v. Camlet, 2 Edw. Ch. 127; Sohier v. Williams, 1 Curtis, 497; also, authorities on this point cited for the appellants.

We find, after a most careful examination, no authority for the proposition, that a remainder-man can be affected by a litigation between one asserting a right hostile to him and the tenant of the preceding estate, when the latter had no interest whatever in the litigation. The authorities which we have adduced condemn such a proposition, and it seems irreconcilable with reason and justice. It would impose the costs and expense and responsibility of a litigation upon one having no interest in it, and no *right* to be affected by it. But the fault of the proposition is most striking and clear in this, that it would place at the mercy of the holder of the antecedent estate the rights of those to come after him, without affording any guaranty of good faith or diligence. An estate in remainder would be worthless, if it could be defeated by a suit with the tenant for life, in which the latter had no interest to be affected. The doctrine of representation is consistent with justice and reason and right, only when the representative has a common interest with the represented, so that the protection of his own interest will include the protection of the rights which he represents.

In the question of the reformation of the deed, so as to make it convey to Shackelford the same interest which is conveyed to the heirs of Mrs. Shackelford, the tenant for life had not the slightest interest. If a suit had been brought against Mrs. Shackelford in her life-time, for the purpose of reforming the deed, so as to give the property to her husband in the contingency of her dying before him without issue, there would have been imposed upon her the burden and expense of protecting interests, with which she had no connection, and depending upon a question of no concern to her. The law would be unjust

in imposing such a burden upon her; and it would be still more unjust in divesting the rights of the remainder-men in a proceeding to which they were not parties, either actually or by representation of their interests. The law would not have tolerated a suit for the reformation of the deed in the particular described, against the tenant for life.

Until the death of Mrs. Shackelford, there was no person against whom Shackelford could have maintained a suit, the decree in which would have concluded the persons whose interests would have been directly affected by the reformation of the contract; and laches cannot be imputed to him for the failure to bring an earlier suit. We decide, therefore, that the decree of the chancellor, dismissing the bill upon the ground of laches, was erroneous.

The following authorities present analogies, which sustain the argument of the foregoing opinion, and we therefore cite them: Powell v. Wright, 7 Beavan, 449–50; Story's Eq. Pl. §§ 81, 83, 87, 130, 131, 96, 133, note 1; Goodess v. Williams, 2 Y. & C. 595; Browne v. Blount, 2 Russ. & M. 83; Grace v. Torrington, 1 Collier, 3; S. C., 2 Collier, 53; Rayley v. Best, 1 Russ. & M. 659.

The decree of the court below is reversed, and the cause remanded.