# PARISH *vs.* PARISH.

[BILL IN EQUITY FOR RECOVERY OF SLAVES, WITH ACCOUNT OF HIRE.]

1. *Bequest to daughter "during her life-time, and her heirs after her."*—A bequest of slaves and land to the testator's daughter, "to be her right and property during her life-time, and her heirs' after her, together with their increase; but, should she die without an heir, then the property to be divided among the rest of my [his] heirs"; followed by a general residuary bequest to her, of all the rest of his estate, both real and personal, "to be disposed of as she thinks fit among my [his] lawful heirs at my [his] death,"—under the operation of the rule in Shelley's case, vests in the daughter an absolute estate in the slaves.

APPEAL from the Chancery Court of Dale and Henry. Heard before the Hon. WADE KEYES.

THE bill in this case was filed, on the 10th August, 1857, by Eleazer Galloway, against William Parish and Roger Parish ; and sought a recovery of certain slaves,

with an account of their hire, and the cancellation of a written instrument, by which the complainant had released all his interest in said slaves to William Parish. The complainant claimed the slaves under a conveyance from Amy Parish, dated the 21st June, 1844, and had them in his possession, as he alleged, from the time said conveyance was executed, until February, 1854, when William Parish, by fraud and misrepresentation, succeeded in obtaining the possession of them, aad induced the complainant to release all interest in them to him. The bill alleged, that Roger Parish had possession of the slaves, held them adversely to William Parish, and claimed title to them as the property of the estate of Edward Parish, deceased, of which he was the administrator ; and that William Parish had instituted a suit against him to recover them. The bill also prayed an injunction of this suit, and general relief.

Amy Parish, William and Roger Parish, and the complainant's wife, were the children of Edward Parish, deceased, who died in South Carolina, where he then resided, in 1822. The last will and testament of said Edward Parish, which was dated the 5th June, 1822, and admitted to probate on the 9th August, 1822, and of which said Amy Parish was appointed the executrix, contained the following clauses : *"First*, I give and bequeath to my beloved daughter, Amy Parish, two negroes, viz., Sid and Peter ; also, one plantation, or tract of land, lying and being as follows," (describing it,) "to be her right and property during her life-time, and her heirs' after her, together with their increase ; but, should she die without an heir, then the said property to be equally divided among the rest of my heirs. *Secondly*, I give to said Amy Parish all the rest of my estate, real and personal, to be disposed of by her as she thinks fit among my lawful heirs at my death." Amy Parish duly qualified, in South Carolina, as the executrix of said testator's will, and afterwards brought the slaves to this State, where she died, in the latter part of the year 1853, without children, and having never married. The slaves in controversy are the descendants of the woman Sid, mentioned in the first clause of said will.

. The defendants filed separate answers. William Parish admitted, that Amy Parish owned the absolute property in the slaves, and had conveyed them to the complainant ; and he alleged, that he had purchased the complainant's interest in them, for a fair and valuable consideration, without any fraud or misrepresentation. Roger Parish admitted, that the conveyance from the complainant to William Parish was procured by fraud and other improper means, and ought to be set aside ; but he denied that Amy Parish owned the absolute property in the slaves, and insisted, on the contrary, that she took only a life-estate under the will of Edward Parish. Each of the defendants demurred to the bill, for want of equity, for misjoinder of parties, and because the complainant had an adequate remedy at law; and William Parish prayed that his answer might be taken as a cross-bill for the recovery of the slaves from Roger Parish, with an account of their hire, and for general relief.

At the November term, 1858, by agreement of counsel, the cause was submitted to Chancellor KEYES, for a decree on the legal effect of the will of Edward Parish ; and he held that, under the first clause of said will, Amy Parish took an absolute estate in the slaves. At the May term, 1860, on final hearing on pleadings and proof, Chancellor SAFFOLD presiding, the complainant's bill was dismissed, at his cost; and a decree was rendered, directing Roger Parish to deliver up the slaves to William Parish, and to account with him for the hire.

The appeal is prosecuted by Roger Parish ; and, by agreement of counsel, the only matter assigned as error is that part of the chancellor's decree which relates to the construction of Edward Parish's will.

GOLDTHWAITE, RICE & SEMPLE, with whom was L. L. CATO, cited *Perrin v. Blake,* 4 Cruise, 381, tit. 38; *Tanner v. Livingston,* 12 Wendell, 83 ; *Tongne's Lessee v. Nutwell,* 13 Md. 415 ; *Findlay v. Riddle,* 3 Binney, 148 ; *Cooper v. Collis,* 4 Term, 299 ; *Bridges v. Wilkins,* 3 Jones'

38

Eq. (N. C.) 342 ; *Riggins v. McClellan*, 28 Missouri, 23 ; *Austin v. Payne*, 8 Rich. Eq. (S. C.) 9. .

PUGH & BULLOCK, *contra*, cited *Machen v. Machen*, 15 Ala. 373 ; *Hamner v. Smith*, 22 Ala. 433 ; *Isbell v. Maclin*, 24 Ala. 315 ; *Price v. Price*, 5 Ala. 578 ; *Ewing v. Standifer*, 18 Ala. 400.

A. J. WALKER, C. J.—There can be no doubt that the chancellor was correct in deciding, that Amy Parish took the absolute estate, and that the word *heirs* was a word of limitation, and not of purchase. There is nothing in the context which shows that the word *heirs* was used in the sense of children. The limitation over, upon the death of the first taker without heirs, with the direction that the property should be then divided, does not qualify "*heirs*," so as to give the word the signification of children. There is no qualification which prevents the heirs generally, lineal or collateral, from taking. The evident meaning of the testator was, that all persons who might be the heirs of Amy at her death, might take as heirs ; and they can not take as purchasers. "When they take in the character of heirs, they must take in the quality of heirs." The rule in Shelley's case applies, and merges the limitation over to the heirs in the life-estate, and enlarges or expands the life-estate into a fee.—*Price v. Price*, 5 Ala. 578 ; *Hamner v. Smith*, 22 Ala. 433 ; *Ewing v. Standifer*, 18 Ala. 400 ; *Machen v. Machen*, 15 Ala. 373 ; *Isbell v. Maclin*, 24 Ala. 315 ; *Shackleford v. Bullock*, 34 Ala. 418 ; *Lloyd v. Rambo*, 35 Ala. 709.

In pursuance of the agreement of counsel, the approval of the chancellor's decision, upon the single point which we have noticed, must work an affirmance. ..